Sanjay Chaubey, Esq. (SC-3241)
LAW OFFICES OF SANJAY CHAUBEY

Empire State Building
350 Fifth Avenue, Suite 5013
New York, NY 10118
Phone: (212) 563-3223
Fax:    (212) 563-4534

Attorney for Plaintiff Mohamed Bary

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MOHAMED BARY | ) | Docket No. CV 02 5202 |
|                 Plaintiff | ) | |
| | ) | |
|       -against- | ) | |
| | ) | |
| DELTA AIRLINES, INC. | ) | |
|              Defendant | ) | (Trager, J.) |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

| | | Page No. |
|---|---|---|
| | SUMMARY OF ARGUMENT | 1-2 |
| I. | FACTUAL BACKGROUND | 3-5 |
| | A. Plaintiff's Testimony | 5-6 |
| | B. Defendant's Testimony | 6 |
| II. | LEGAL STANDARD | |
| | A. Motion for Judgment on the Pleadings | 6-7 |
| | B. Motion for Summary Judgment | 7-8 |
| III. | ARGUMENT | |
| | A. Plaintiff's State Civil Rights and Tort Claims Are Not Preempted by Federal Aviation Law. | 8-9 |
| | 1. Overview of Preemption Law | 9-10 |
| | 2. Federal Aviation Law does Not Expressly Preempt Plaintiffs State Law Claims. | |
| | a. The Airline Deregulation Act | 10-11 |
| | b. Supreme Court Precedent | 11-12 |
| | c. The ADA Does Not Preempt Plaintiff's State Civil Rights or Tort Claims. | 12-13 |
| | B. Defendants Are Not Exempt From Compliance With Federal Civil Rights Statutes. | 15-17 |
| | C. Contract Carriage | 17 |
| | D. Bailment | 17-18 |
| IV. | CONCLUSION | 18 |

## TABLE OF AUTHORITIES

CASES                                                                    PAGE NO.

*Abou-Jaude v. British Airway*
228 Cal. App. 3d 1137, 1143 (1991)                                       12

*Abdu-Brisson v. Delta Airlines, Inc.*
128 F.3d 77, 84 (2d Cir. 1997)                                           13, 14

*Air Transp. Ass n of America v. City and County of San Francisco*
266 F.3d 1064, 1070(9th Cir. 2001)                                       10, 11,12,13,14

*American Airlines v. Wale,*
513 U.S. 219,223 (1995)                                                  10

*Arshad Chowdhury vs. Northwest Airlines, Corp.*
*Docket No. C02-02665*                                                   17

*Bayaa* v. *United Airlines, Inc.*
No. 02-4368, pp. 11-12 (CD. Cal. October 10, 2002)                       16

*B.K.B. v. Maui Police Dep't.,*
276 F.3d 1091, 1099(9th Cir.2002)                                        7

*Botz* V. *Omni Air kit I,*
286 F.3d 488 (8th Cir. 2002                                              14

*Buckey v. County of L.A., 968*
23 F.2d 791, 794(9th Cir. 1992)                                          7

*Conley v. Gibson,*
355 U.S. 41,45-46,78 S. Ct. 99,2 L.Ed2d 80 *(1957)*                      7

*Chaffin v. United State*
176 F.3d 1208, 1213(9th Cir. 1999)                                       7

*Charas v. Trans World Airlines, Inc.,*
160 F.3d 1259, 1265 (9th Cit 1998)                                       10, 11, 12, 13

*Choate v. Champion Home Builders Co.*
222 F. 3d 788, 794, n.8 (10th Cir. 2000)                                 9

*City and County of San Francisco v. Assessment Appeals Bd.,*
122 F.3d 1274, 1276 (9th Cir. 1997)                    15

*Cipollone v. Liggett Group. Inc.*
505 U.S. 504, 517 (1993)                               9

*Cordero v. CIA Mexicana de Aviacion*
681 F.2d 669, 672 (9thCir. 1982)                       8

Cybernetic Sen's., Inc.,
252 F.3d 1039, 1045, (9th Cir. 2001)                   9

*Duncan v. Northwest Airlines, Inc.*
208 F.3d 1112, (9th Cir. 2000)                         12, 13

*Greenwood Trust Co. v. Corn. Of Mass.*
971 F.2d 818, 823 (1st Cir. 1992).                     10

*Hal Roach Studios v. Richard Fe/ncr & Co.,*
**896 F.2d** 21 1542(9th Cir. 1990)                    7

*Hodges v. Delta Airlines. Inc.*
44 F.3d 334 (5thCir. 1995)                             14

*Jensen v. City of Oxnard*
145 F.3d 1078, 1082 (9th Cir. 1998)                    7

*Lain v. Univ. of Hawaii*
40 F.3d 1551, 1564 (9th Cir. 1994)                     7

*Medtronic, Inc. v. Lohr*
518 13.5. 470, 485 (1996)                              10

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374, 378 (1992)                               10,11, 12

*Padfield v. AIG Life Ins. Co.*
290 F.3d 1121, 1124(9th Cir. 2002)                   7

*Peterson v. Continental Airlines, Inc.,*
970 F. Supp. 246, 249 (S.D.N.Y. 1997)                  10

*Rice v. Santa Fe Elevator Corp.*
331 U.S. 218, 230 (1947)                               10

*Saini Francis College v. Al-Khazraj,.*
481 U.S. 604, 612-13 (1987).                                    3

*S.E.C. v. Murphy*
626 F.2d 633, 640 (9th Cir. 1980)                               7

*Smith v. America West Airlines, Inc.,*
44 F.3d 344 (5th Cir. 1995)                                     14

*Sun Say. & Loan Ass',, v. Dierdorff,*
825 F.2d 187,191 (9th Cir. 1987)                               7

*Tall Club of Silicon Valley v. American Airlines. Inc.*
*2000 WL 868524, \*2 (ND. Cal. 2000)*                          11

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia.*
73 F.3d 1423 (7thCir. 1996)                                    14

*United States v. City and County of Denver*
100 F.3d 1509, 1513 (lothCir. 1996)                            9

*United States v. City of Redwood Cit*
640 F.2d 963, 966 (9th Cir. 1981)                              7

*United States v. United Coin 1 Tuna Coq,*
425 U.S. 164, 168 (1976))                                      15

*Williamson Gen. Dynamics Co'p.*
208 F.3d 1144, 1149(9th Cir. 2000)                             9

*Willis v. Pac. Mar Assoc.*
236 F.3d 1160, 1168 (9th Cir. 2001)                            15

*Woodson v. US Airways, Inc.*
67 F. Supp. 2d *554,* 557 (MD.N.C. 1999)                       15

*Wolens,* 513 U.S. at 230-33                                   11, 12

*World War II Era Japanese Forced Labor Litig.,*
114 F. Supp. 2d 939, 944 (N.D.Cal. 2000)                       7

STATUTES                                                       PAGE NO.

42 U.S.C. § 1981 (Section 1981)                               15, 16

Title VI of the 1964 Civil Rights Act (Title VI)             15

Section 1981 and Title VI                                     15, 16

49 U.S.C. § 40127(a)                                          16

New York Civil Rights 1909; Article 4                        8

49 U.S.C. § 1305                                             10

49 U.S.C. § 40101(a)                                         10

49 U.S.C. § 417 l3(b)(l)                                      10

## SUMMARY OE ARGUMENT

In the motion for summary judgment, defendants argue that express preemption and conflict preemption bar plaintiffs state civil rights and tort claims against Delta Airlines, and that federal aviation law exempts commercial airlines from complying with federal civil rights statutes. In essence, defendants ask this Court to hold that airlines, unlike all other businesses in the United States, are exempt from all federal and state civil rights laws.

Pursuant to well established various circuit laws passed, defendants arguments must fail. Federal aviation law does not preempt Mr. Bary's state law claims. In case after case, the circuit have held that the express preemption provision contained in federal aviation statutes does not apply to state civil rights or tort claims. Despite this clear precedent, defendant's contend that Mr. Bary's state law claims are somehow preempted. Nor are plaintiff's state law claims subject to field or conflict preemption. When Congress has enacted, as it has here, an express preemption provision, the scope of preemption is determined exclusively by such provision, thereby foreclosing a field or conflict preemption analysis.

Defendant's argument that aviation law exempts commercial airlines from complying with federal civil rights statutes is also incorrect. Defendants base their argument on their claim that federal civil rights laws somehow conflict with a statutory provision granting air carriers discretion to make safety decisions and therefore cannot be applied in this context. This contention lacks merit. The provision granting pilots discretionary authority to make safety decisions does not conflict with civil rights laws. The fact that air carriers may make discretionary safety decisions does not give them unfettered authority to discriminate against airline passengers. Neither aviation law nor its legislative history contain any indication that Congress intended to take the drastic step of eliminating established civil rights protections in the airline industry.

Defendants sweeping and unsupported arguments would require the Court to ignore settled law and to take the unprecedented step of eliminating modern civil rights protections across an entire industry. If defendant's arguments were accepted, airlines could arbitrarily refuse passage to Arab Americans, African Americans, women, or people with various religious

1

beliefs, solely because of their race, ethnicity, gender, or religion. As in bygone eras, victims of such invidious discrimination would be left with no judicial recourse.

The Court should deny defendants motion for judgment for summary judgment. Defendant's arguments are not supported in law, and would eliminate private enforcement of civil rights protections in an industry serving millions of individuals each year.

2

## I.   **FACTUAL BACKGROUND**

Plaintiff Mohamed Bary (herein after referred as "Bary" or "plaintiff") has brought suit against Delta Airlines, Inc. (herein after referred as "Delta" or "defendant") to vindicate his right to equal treatment under the law, regardless of his race, ethnicity, and skin color. The acts alleged in plaintiffs Amended Complaint demonstrate that Delta refusal to permit Mr. Bary to carry his baggage intended to be 'in-cabin' on board his flight resulted not from Delta's security concerns, but because of Mr. Bary's ethnicity.[1]

On November 8, 2001, Plaintiff arrived at LaGuardia Airport (LGA) with the intention of traveling on a Delta Airlines flight to Denver, CO plaintiff was traveling to Denver, CO to participate in the international gems and jewel show which was scheduled for November 9, 2001 to November 11, 2001 at Denver Merchandize Mart (Pavilion Building) 451 E, 58 Avenue, Denver, CO.

When plaintiff reported for check-in to flight, Delta flight # DL 0405 scheduled to depart for Denver, CO, via Cincinnati at 09:10 a.m. on November 8, 2001, he was informed at the check-in counter that due to security reasons his baggage and person has to be searched by the security guards. Accordingly, plaintiff's baggage that included the cabin baggage was opened and searched by the security personnel. During the search of the baggage, security agent found variety of precious gems and jewels in the cabin baggage that was intended to be carried by the plaintiff inside the flight. Upon this, security agent also called the check-in clerk who inquired about the purpose of carrying such precious gems and jewels for which plaintiff had sufficient and satisfactory information, invitation and brochure reflecting his participation in the International Jewels and Gems show at Denver, CO to be held on November 9, 2001 to November 11, 2001.

Despite answering all the questions raised by the check in clerk and the carry on cabin

---

[1] Because Section 1981 was drafted and became law at a time when various ethnic groups were considered separate races, the Supreme Court has held that it protects individuals discriminated against on the basis of ethnicity as well as race, *Saini Francis College v. Al-Khazraji*, 481 U.S. 604, 612-13 (1987). Accordingly the terms race and ethnicity will be used interchangeably in this brief for the purposes of Section 1981 analysis.

3

baggage being of well within the permissible limit in size and weight, the Delta check-in-clerk disallowed plaintiff to carry the cabin baggage containing the gems and jewels on the aircraft and insisted to check-in the intended cabin baggage containing the gems and jewels also as check-in luggage. However, plaintiff tried his level best to convince the check-in clerk and the security personnel about the worth of the gems and jewels in the carry-on baggage which was in fact of the permissible size and weight allowed to be carried in the flight on person, but the check-in clerk and the security agent refused to allow plaintiff to carry the same in the flight rather insisted that same be checked in as luggage. Having no option, plaintiff was forced, coerced, pressurized, and/or was persuaded to hand over the intended cabin baggage to the Delta staff to be checked in. This act of the defendant itself was breach of the tariff rules and the ticket contract resulting into all the terms to be void. This was also contrary to the terms and conditions of carry on baggage as published by the defendant on their website www.delta.com as later seen on July 18, 2002.

It is also pertinent to point out that the defendant did not subjected other passengers to either such treatment or restrictions as to the plaintiff and other passengers were carrying their cabin baggage with them and plaintiff was singled out, which also creates serious concerns in the plaintiff's mind that either it was that the defendant, its employees or agents discriminated the plaintiff on the basis of his race, religion, ethnicity, color or national origin or had ulterior motives after discovering precious gems and jewels in his carry-on baggage.

On arriving at Denver, CO, plaintiff discovered that two pouches containing valuable precious gems and jewels and a box containing several ornamental rings were missing from the intended carry-on baggage which was by force of the defendant's agents, employees or representatives was booked as checked in luggage. This incident was reported to the Denver Police Department at the first opportunity.

On return to New York plaintiff immediately contacted the Police at LaGuardia Airport and also brought to the notice of the defendant.

Plaintiff also suspects that the employees, agents, representatives of the defendant airline taking advantage of the discriminatory practices have committed intentional tort of conversion of

4

the valuable property or may be concluded as loss of valuables handed over to the employees, agents, representatives, associates or/and assignee of the defendant airline who is responsible for the loss due to willful negligence for which defendant is responsible and liable.

Plaintiff through counsel also called upon defendant and made a demand of $373,186.81 due to the loss of the precious gems and jewels and also requested particulars of the staff who were involved in the matter including photos and video recordings of the security cameras and other evidentiary material in the possession and control of the defendant but to no avail. Plaintiff also warned the defendant that any concealment or destruction of such evidence would lead to the obstruction of justice leading to wide ranging complications.

The facts, particularly when viewed in the light most favorable to Plaintiff, as is required at this stage, indicate that defendant unlawfully disallowed plaintiff to carry on baggage item on one of its flight for which he possessed a valid ticket on the basis of this perceived race, color, ethnicity, alienage, ancestry and/or national origin.

Whether viewed through the broad lens of Section 1981, passed nearly 150 years ago, or through the focused lens of airline regulations promulgated within the past decade,[2] there can be no doubt that unjustified disparate treatment on the basis of one s race or ethnicity violates bedrock principles of American jurisprudence.

As demonstrated below, it is well settled that Delta Airlines continues to be subject to state and federal laws protecting civil rights.

## A. Plaintiff's Testimony

Defendant in their instant summary judgment motion has selectively quoted parts of plaintiff's testimony, which is factual, informative, and not in the context of discriminatory acts of defendant. However, plaintiff in detail has explained during deposition that why and how he felt discriminated. More particularly, on page 106, line 17 of transcript dated August 5, 2004 attached as Exhibit 'C' to defendant's motion states, "they can search as much as they like, my bags, but they should have allowed like everybody else my bag to the flight with me, which I

---

[2] *See* discussion of the various federal aviation regulations prohibiting discrimination, and the Department

5

was taking, and it had over half a million dollar worth of merchandise. And seeing that the valuables after telling them and everybody there they allowed to take a bag to the flight I really strongly – I don't know. I cannot explain in words why they stopped me by not allowing me to take a bag to the flight." Plaintiff has also stated on page 113, line 24 of transcript dated August 5, 2004 attached as Exhibit 'C' to defendant's motion states, "I am an Arab. I am Muslim. Whereas I was only one who had to undergo this. I mean, situation, you know, and the rest of the people were allowed, other passengers were allowed with their carry-on to the flight even though I had valuables and they searched my bag. Still they wouldn't allow me and that's my main question."

### B. Defendant's Testimony

Testimony provided by two witnesses, Ms. Vera Hall and Mr. James Wlodarczyk is neither credible nor reliable for the reason, both did not testify any factual details under the pretext of express permission of the Transportation Safety Authority (TSA) and by its counsel. Nonetheless, the testimony of witnesses controverted each other. For instance on page 29, line 5 of the transcript, Ms. Hall in a question, "Which means two bags to be booked as luggage?" Vera Hall answered "yes". Then she talks about booking two bags and different details about the bags. Whereas, second witness, Mr. James Wlodarczyk states in his testimony on page 31, line 9, "and at that point, Mr. Bary left the area and walked towards the gate with his bag in hand.' Thereafter, on page 33, line 13 he explains that, "once a passenger goes across the screening area, he can go to the gates only and other way was back outside through the magnetometer, which you would have to go through the whole procedure again." Clearly, one-witness states that she booked both the baggage as checked in luggage and the other witness states under oath that plaintiff carried his baggage in the cabin. Therefore, the testimony of both the witnesses neither credible nor reliable for consideration of the purposes of motion for summary judgment.

## II.    LEGAL STANDARD

### A.    Motion for Judgment on the Pleadings

A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the

---

of Transportation (DOT) guidelines confirming these prohibitions, *infra* at 20-21.

same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *In re World War II Era Japanese Forced Labor Litig.*, 114 F. Supp. 2d 939, 944 (N.D.Cal. 2000). The Court must accept all of the factual allegations contains in plaintiffs complaint as true and draw all reasonable inferences in favor of plaintiff. *Hal Roach Studios v. Richard Fe/ncr & Co.*, **896 F.2d** 21 1542(9th Cir. 1990); *Sun Say. & Loan Ass'., v. Dierdorff*, 825 F.2d 187,191 (9th Cir. 1987). In particular, [c]ivil rights complaints are to be liberally construed. *Buckey v. County of L.A.*, 968 23 F.2d 791, 794(9th Cir. 1992).

In deciding a motion for summary judgment on the pleadings, the Court is not to decide the merits of the claims. Rather, the only issue to be decided is whether the moving defendant has shown beyond a doubt that the plaintiff can prove no set of facts entitling him to relief *Conley v. Gibson*, 355 U.S. 41,45-46,78 S. Ct. 99,2 L.Ed2d 80 *(1957); Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998). Because defendants have such a heavy burden, it is only the extraordinary case in which dismissal is proper. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). Judgment on the pleadings must be denied because this Circuit and numerous other courts repeatedly have held that federal and federal aviation law does not preempt state civil rights claims.

### B.    Motion for Summary Judgment

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124(9th Cir. 2002); *B.K.B. v. Maui Police Dep't.*, 276 F.3d 1091, 1099(9th Cir.2002). In deciding a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party. *Chaffin v. United States*, 176 F.3d 1208, 1213(9th Cir. 1999). The movant has the burden of showing that there is no genuine issue as to any material fact in the case. *S.E.C. v. Murphy*, 626 F.2d 633, 640 (9th Cir. 1980).

Motions for summary judgment in discrimination cases must be evaluated with special care because motive often is the critical issue. *Lain v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994). Courts require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry one that is most appropriately conducted by the fact finder, upon a full record. *Id.* Cases alleging

7

discrimination by airlines are particularly inappropriate for summary judgment because the trier of fact should make determinations regarding whether the airline's employees, agents or representatives exercise of discretion was reasonable. *See Cordero v. CIA Mexicana de Aviacion,* 681 F.2d 669, 672 (9thCir. 1982).

When the record is viewed in the light most favorable to Mr. Bary, defendant's motion for summary judgment must be denied because numerous circuits repeatedly have held that federal and state civil rights claims are not preempted by federal aviation law. Moreover, there is more than sufficient evidence from which a reasonable jury could conclude that defendants forced plaintiff to book his carry-on baggage that had valuable gems and jewels as check-in baggage because of his ethnicity. Material facts are in dispute and consideration of summary judgment particularly when discovery indicates to the contrary.

## III.   **ARGUMENT**

### A.   **Plaintiff's State Civil Rights and Tort Claims Are Not Preempted by Federal Aviation Law.**

Based on defendant's discriminatory conduct, plaintiff has alleged violations of New York Civil Rights 1909; Article 4, Unlawful Deprivation of Access to and/or Discrimination in Furnishing of a Public Accommodation; and violations of the states common law prohibitions against the infliction of emotional distress. Defendants argue that these claims are preempted, claiming express preemption, field preemption, and conflict preemption. The Court should reject defendant's arguments.

As discussed below, numerous circuits have repeatedly held that state civil rights and tort claims like those at issue here are not expressly preempted by federal aviation law. The law express preemption provision preempts only those state claims that impact economic deregulation or competition between airlines. Congress never intended to preempt state civil rights and tort claims because they bear little, if any, relationship to economic deregulation or competition. Thus, in case after case, the circuits have rejected preemption arguments virtually identical to those made by defendants. Defendants fails to mention, much less discuss, these cases that are fatal to their claim of express preemption.

8

Defendant's claims of conflict preemption are equally without merit. Defendants ask the Court to imply preemption of plaintiff's state claims based on Congress enactment of laws pertaining to air travel and on to alleged conflict between plaintiff's claims and these laws. When, as here, a federal statutory scheme contains an express preemption provision, the preemptive scope of the scheme is limited to the preemption set forth in the express provision. As discussed below, because Congress has spoken, it is inappropriate to infer any preemptive intent beyond the express provision.

## 1. Overview of Preemption Law

Preemption analysis stems from the Supremacy Clause, which provides that federal law "shall be the supreme Law of the Land." The Supremacy Clause, however, invalidates only those state laws that interfere with, or are contrary to, federal law. US. Const., art. VI, cl. 2; *In re Cybernetic Sen's., Inc.*, 252 F.3d 1039, 1045, (9th Cir. 2001) (quoting Hilisborough County, Fla. v. Automated Med. Labs., Inc., 471 U.S. 707, 712 (1985). The Ninth Circuit analyzes preemption issues using the three categories outlined by the Supreme Court: (1) express preemption—"where Congress explicitly defines the extent to which its enactments preempt state law," (2) field preemption--where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy,' Id.; and (3) conflict preemption-- where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the fill purposes and objectives of Congress." *Williamson Gen. Dynamics Co'p.*, 208 F.3d 1144, 1149(9th Cir. 2000) (citing *Indus. Truck Ass'n, Inc. v. Henry.* 125 F.3d 1305, 1309(9th Cir. 1997));

As discussed below, when a statutory scheme contains an express preemption provision, 15 field and conflict preemption are precluded. *See, e.g., Cipollone v. Liggett Group. Inc.,* 505 U.S. 504, 517 (1993) (plurality opinion); *see also Choate v. Champion Home Builders Co.,* 222 F. 3d 788, 794, n.8 (10th Cir. 2000); *cf United States v. City and County of Denver,* 100 F.3d 1509, 1513 (lothCir. 1996).

Two presumptions apply when considering preemption. First, because the states are independent sovereigns in our federal system, Congress does not cavalierly preempt state law causes of action. *Air Transp. Ass n of America v. City and County of San Francisco,* 266 F.3d

9

1064, 1070(9th Cir. 2001) (quoting *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cit 1998) (en banc)); *see also Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Second, in every preemption case, Congressional intent is the ultimate touchstone. *Medtronic, Inc. v. Lohr*, 518 13.5. 470, 485 (1996). Thus, in determining the scope of preemption, we start with the assumption that the historic police powers of the States [are] not to be superseded...unless that was the clear and manifest purpose of Congress. *Air Transp. Ass n of America.* 266 F. 3d at 1070. Courts tread cautiously in the area of preemption because the power to displace state sovereignty is one that Congress exercises with extreme caution. *Greenwood Trust Co. v. Corn. Of Mass.*, 971 F.2d 818, 823 (1st Cir. 1992).

## 2. **Federal Aviation Law does Not Expressly Preempt Plaintiffs State Law Claims.**

### a. **The Airline Deregulation Act**

In 1958, Congress passed the Federal Aviation Act, 49 U.S.C. § 1305, *et seq.* (FAA), which, *inter alia,* empowered the Civil Aeronautics Board to regulate interstate fares and to take administrative action against certain deceptive trade practices. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). Under the FAA, individuals could bring common law or state statutory claims against airlines. *See Peterson v. Continental Airlines, Inc.*, 970 F. Supp. 246, 249 (S.D.N.Y. 1997) (citation omitted). In 1978, Congress amended the FAA by passing the Airline Deregulation Act (ADA), the primary purpose of which was to remove regulatory barriers to competition among airlines to promote efficiency, innovation, and low prices, as well as variety [and] quality . . . of air transportation services. *Morales*, 5Q4 U.S. at 378-79 (quoting 49 U.S.C. §§ 1302(a)(4), (a)(9), recodified as 49 U.S.C. § 40101(a)).

The ADA contains an express preemption provision, which provides that state, or local governments may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier. 49 U.S.C. § 41713(b)(1).[3] The

---

[3] This prDvision was originally coditied ~s 49 U.S.C. § 1305(axt). In 994, the section was amended and 26 incorporated into the Federal Aviation Administration Authorizalion Act of 1994. See 49 U.S.C. § 417 l3(b)(l). In amending and jecodifying the preemption elau~. Congress indkated that it did not intend to alter 27 the substance of the provision. See *American Airlines v. Wale,,:*, 513 U.S. 219,223 (1995).

Ninth Circuit has repeatedly held that this preemption provision does not abridge or alter existing common law and statutory remedies for state civil rights and tort claims. *Tall Club of Silicon Valley v. American Airlines. Inc., 2000 WL 868524, \*2 (ND. Cal. 2000).* See also *Air Transp. Ass n of America,* 266 F.3d at 1070 (quoting *Charas,* 160 F.3d at 1265) (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992)) (Nothing in the Act itself, or its legislative history, indicates that Congress had a clear and manifest purpose to displace state [laws] in actions that do not affect deregulation in more than a peripheral manner.). Despite this overwhelming precedent, defendants incorrectly rely on the ADA s preemption provision to argue that plaintiffs state law claims are preempted. As discussed below, this argument does not withstand scrutiny.

### b. Supreme Court Precedent

The Supreme Court has addressed the scope of the ADA s preemption clause on two occasions. In both decisions, the Court indicated that, in light of Congressional intent, the ADA does not preempt most state claims. *See Wolens,* 513 U.S. at 230-33 (holding that contract claims not preempted); *Morales,* 504 U.S. at 390 (holding that state claims that affect airline fares in too tenuous, remote, or peripheral a manner not preempted). To determine whether a state or local law is preempted by the ADA, the Supreme Court applied the analytical framework used in ERISA preemption cases. *See Morales,* 504 U.S. at 384. Under this framework, a state or local law relates to a price, route, or service if it has a connection with, or reference to a price, route or service. *Air Transp. Ass n,* 266 F.3dat 1070 (quoting *Wolens,* 513 U.S. at 223). The Court's interpretation of the terms connection with and reference to involves an assessment of whether the state law will have a significant effect on rates, routes, or services. *Morales,* 504 U.S. at 388-89. Only those laws having such an effect will be deemed preempted. *Id.at390.*

In *Morales,* the Court explained the limitations of the ADAs preemptive reach. It cautioned that [s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner to have pre-emptive effect. *Id.* at 390. In *Wolens,* the Court once again recognized the limited scope of the ADA s preemption clause. The Court held that the plaintiffs claims for breach of contract, resulting from the airline s decision to devalue plaintiffs frequent flyer miles

11

were not preempted. *Wolens*, 513 U.S. at 222. In rejecting the airline's sweeping preemption arguments, the Court found that Congress did not intend to preempt common law contract claims. *Id.* Justice O Connor concluded that the ADA does not preempt personal injury claims because such claims are not sufficiently related to airline services. Wolens, 513 U.S. at 242. (O Connor, concurring in part and dissenting in part). Likewise, Justice Stevens noted that the ADA does not preempt common law tort actions based on negligence or fraud. *Id.* at 235-36 (Stevens, J., concurring in part and dissenting in part).

Although *Morales* and *Wolens* did not directly decide whether the ADA preempts state civil rights or tort claims, the reasoning of both decisions makes clear that such claims are not preempted because they have virtually no relationship to competition between airlines.

### c.   The ADA Does Not Preempt Plaintiff s State Civil Rights or Tort Claims.

Against this backdrop, various circuits have held directly that the ADA does not preempt state civil rights or tort claims, including the New York Civil Rights Law. Two recurring strains run throughout these decisions. First, in concluding that state civil rights and tort claims are not preempted by the ADA, the Ninth Circuit has found consistently that Congress did not intend to preempt such laws. According to the Ninth Circuit, Congress did not intend to immunize airlines from liability for personal injuries caused by their tortious conduct. *Charas*, 160 F.3d at 1266 (holding ADA does not preempt state tort claims). Second, the circuits repeatedly have held that the ADA does not preempt state civil rights or tort laws because the effect such laws have on airline prices, routes, or services is too tenuous, remote, or peripheral. *See, e.g., Air Transp. Ass n*, 266 F.3d at 1181-82; *see also Abou-Jaude v. British Airways*, 228 Cal. App. 3d 1137, 1143 (1991) (holding that the ADA does not preempt Unruh Civil Rights Act claim for discrimination based on ancestry or national origin because it is a general law which does not attempt to regulate air carriers.).

In *Duncan v. Northwest Airlines, Inc.*, 208 F.3d 1112, (9th Cir. 2000), *cert. denied*, 531 U.S. 1058 (2000), was against one of the defendants from this case. In *Duncan*, an airline employee alleged injuries from Northwest Airlines policy of permitting smoking on certain flights. *Id.* at 1113. As here, defendant argued that the plaintiff's claims related to airline services

12

and, thus, were preempted by the ADA. *Id.* The Court rejected defendant s arguments, holding that the ADA did not preempt the plaintiff's claims. According to the Court, the term service should be interpreted narrowly in order to prevent the preemption of virtually everything an airline does. *Id.* at 1114. The Court reiterated that Congress intended to preempt only state laws that would adversely affect the economic deregulation of the airlines and the forces of competition within the industry. *Id.*

Defendants here ask the Court to do precisely what it refused to do in *Duncan* to preempt virtually everything an airline does. In *Duncan,* the Court defined the term service in the ADA's preemption clause to refer to prices, schedules, origins, and destinations of the point-to-point transportation of passengers, cargo, or mail. *Id.* (quoting *Charas,* 160 F.3d at 1261). Despite defendants tortured efforts to characterize its racial discrimination against Mr. Bary as somehow related to an airline service, protecting such conduct is not what Congress envisioned when deregulating the airline industry. Whether an airline engages in discrimination has little or nothing to do with competition or efficiency. *Abdu-Brisson v. Delta Airlines, Inc.,* 128 F.3d 77, 84 (2d Cir. 1997) (holding that city and state human rights laws banning age discrimination not preempted by the ADA).

The Ninth Circuit s most recent analysis of whether the ADA preempts state or local civil rights laws involved an airline industry challenge to a San Francisco nondiscrimination ordinance. *Air Transp. Ass n,* 266 F.3d. 1064. The ordinance required contractors doing business with the city not to discriminate, including in the provision of employment benefits to the domestic partners of their employees. *Id.* at 1069. The airline industry argued that because the ordinance required airlines not to discriminate in providing travel benefits and employee discounts, it had both a reference to and connection with prices and services and, thus, was preempted by the ADA. *Id.* According to the airlines, the ordinance impacted the airlines ability to set prices and determine who should have access to flights. *Id.*

The Court flatly rejected the airlines arguments. Contrary to the airlines claims, the nondiscrimination ordinance was not an effort to regulate the airline industry, but was a broad law applying to hundreds of different industries. *Id.* at 1072. Accordingly, the Court found that the ordinance was not preempted by the ADA and was no different from the many other

13

nondiscrimination laws that it had determined were not preempted by the ADA. The Court explained that there was no indication that when Congress passed the ADA, it intended to preempt state and local governments from passing laws that forbid discrimination. *Id.* As the Second Circuit succinctly explains, whether an airline discriminates on the basis of age (or race or sex) has little or nothing to do with competition or efficiency. *Abdu-Brisson v. Delta Airlines, Inc.,* 128 F.3d 77, 84 (2d Cir. 1997).

Defendant's reliance on cases from other circuits to support their claim that the ADA preempts state claims arising out of boarding decisions is misplaced. Unlike Mr. Bary case, none of these cases involve nondiscrimination claims. Moreover, in various cases the courts held that the ADA did not preempt state law claims. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia.* 73 F.3d 1423 (7thCir. 1996) (holding ADA did not preempt state claims for Breach of contract, slander, or defamation because they did not have an economic effect on the airlines rates, routes, or services); *Smith v. America West Airlines, Inc.,* 44 F.3d 344 (5th Cir. 1995) (en banc) (holding that ADA did not preempt a state claim by passengers aboard a hijacked airplane because no congressional intent to displace state personal injury law); *Hodges v. Delta Airlines. Inc.,* 44 F.3d 334 (5thCir. 1995) (en banc) (holding ADA did not preempt state claim by passenger injured by contents of overhead bin since claim had no specific reference to airline services and enforcement of claim would not significantly affect airline services).[4]

In sum, a long line of Ninth Circuit case law regarding the ADA is fatal to defendant's claims here. In case after case considering the same express preemption language cited by defendants, the Ninth Circuit has rejected arguments materially identical to those made by defendants. The law is clear the ADA does not preempt state civil tights or tort laws. As discussed in *Air Transp. Ass n* and the cases it mlies upon, such laws simply do not relate to airline prices, routes, or services and Congress never intended to preempt these laws.

---

[4] In the final case, *Botz* V. *Omni Air kit l,* 286 F.3d 488 (8th Cir. 2002), the court held that the ADA preempted a state whistle blower law because the law granted airline employees the right to refuse an assignment no matter how essential the assignment might be to an airlines ability to provide its scheduled services. *Id.* at 496. As the court explained, this type of state law is highly distinguishable from state nondiscrimination laws. Moreover, the ADAs own whistle blower protections provided powerful evidence of Congress clear and manifest intent to preempt state whistle blower claims related to air safety. *Id.* No such intend is present relating to preemption of state civil rights claims. Defendants attempt to portray state civil rights laws and tort laws as impacting their ability to schedule flights is without any sup port in law, legislative history, or common sense.

14

**B.    Defendants Are Not Exempt From Compliance With Federal Civil Rights Statutes.**

While defendants motion focuses on preemption of plaintiffs state law claims, it includes a perfunctory argument urging the Court to reject plaintiffs federal civil rights claims under 42 U.S.C. § 1981 (Section 1981) and Title VI of the 1964 Civil Rights Act (Title VI). According to defendants, federal civil rights laws should give way to aviation laws granting pilots discretion to ensure the safety of flights. *Def. Mtn.* at 22. Defendants argue that there is a conflicting congressional mandate between federal civil rights laws and laws granting pilots discretion to ensure safety that precludes the application of federal civil rights laws to airlines. *Id.* at 23. Defendants also argue that the Department of Transportation s (DOT) administrative authority over the airline industry precludes the application of Section 1981 and Title VI. *Id.* at 24-25. These arguments have even less support than defendants state law preemption argument.

First, as discussed below, there is no conflict between Section 1981 and Title VI and federal aviation law. Moreover, defendant's argument necessary fails because circuits have made clear that preemption analysis is simply inapplicable where the conflict is between two federal statutes. *Willis v. Pac. Mar Assoc.,* 236 F.3d 1160, 1168 (9th Cir. 2001).

Second, there is no express repeal of Section 1981 or Title VI (or any other civil rights law) in federal aviation law. Defendants have not pointed to any mention of Section 1981 or Title VI in aviation law or its legislative history, much less to any evidence of congressional intent to repeal these important civil rights statutes. Given Congress failure to evince any such intention, courts have assumed without deciding that plaintiffs may bring federal civil rights claims against airlines. *See, e.g., Woodson v. US Airways, Inc.,* 67 F. Supp. 2d *554,* 557 (MD.N.C. 1999) (holding that resolution of state law claims would not conclude case because Section 1981 claim would proceed).

Defendants appear to argue that federal aviation law has repealed Section 1981 and Title VI by implication. *Def MEn,* at 22-25. As the Supreme Court and the Ninth Circuit have recognized, however, it is a cardinal principle of statutory construction that repeals by implication are not favored. *City and County of San Francisco v. Assessment Appeals Bd.,* 122 F.3d 1274, 1276 (9th Cir. 1997) (quoting *United States v. United Coin 1 Tuna Coq,.,* 425 U.S.

15

164, 168 (1976)). An implied repeal may only be found if there is an irreconcilable conflict between the two federal statutes at issue. *City and County of San Francisco,* 122 F.3d at 1276 (citing *Matsushita Elec. Indus. Co. v. Epstein,* 516 U.S. 367, 38! (1996)).

There is no irreconcilable conflict between federal law s grant of discretion to an air **carrier** to refuse to transport a passenger and the federal civil rights protections of Section 1981 and Title VI. The fact that Congress gave air carriers the ability to exercise discretion does not mean that Congress intended for the discretion to be boundless. Air carriers may exercise their statutory discretion, but they may not do so in a discriminatory manner prohibited by Section 1981 or Title VI. As Judge Cooper ruled recently in an airline discrimination case filed the same day as this one, aviation statutes and regulations granting pilots discretion do not give airlines, a license to discriminate. *Bayaa* v. *United Airlines, Inc.,* No. 02-4368, pp. 11-12 (C.D. Cal. October 10, 2002) (order denying motion to dismiss Section 1 981, Title VI and Unruh Civil Rights Act claims).

Department of Transportation **(DOT)** guidance, far from supporting defendant argument that the government should be the sole judge of whether a pilot engaged in discrimination, bolsters the argument that private enforcement of federal civil rights statutes ate not incompatible with airline safety. DOT s own policies and guidelines, which inform individuals alleging discrimination by airlines that they may file a private legal action based on civil rights statutes that provide for private rights of action (e.g., 42 U.S.C. § 1981). *Processing Of Complaints Alleging Discrimination By Airlines Based on Race, Color, National Origin. Sex, Religion Or Ancestry* (DOT October 2,2002).

Finally, based on Congress unequivocal prohibition of discrimination by airlines, it is clear that there is no conflict between federal aviation law and state and federal civil rights laws. For example, Congress prohibits airlines from subjecting a person to discrimination on the basis of race, color, national origin, religion, sex, or ancestry. 49 U.S.C. § 40127(a). Likewise, in the wake of September 11, the DOT responds to incidents of discrimination by cautioning airlines, including Northwest, not to target or otherwise discriminate against passengers based on their race, color, national or ethnic origin, religion, or based on passengers names or modes of dress that could be indicative of such classification. In October 12, 2001, directive, the **DOT** reiterated

16

to airlines that it is important to reemphasize that in performing our critical duties, we may not rely on generalized stereotypes or attitudes or beliefs about the propensity of members of any racial, ethnic, religious, 2 or national origin group to engage in unlawful activity.

The clear weight of authority demonstrates that plaintiff's federal civil rights claims should proceed. In a similar matter entitled *Arshad Chowdhury vs. Northwest Airlines, Corp. Docket No. C02-02665, CRB Hon. Charles R. Breyer, United State District Judge,* at the Northern District of California denied defendant's similar and identical motion for summary judgment. Copy of the Memorandum and Order is attached as **Exhibit 'A'** to this memorandum.

### C.   Contract Carriage

Defendant's argument that the term of Delta's tariff on page 17 provides that items which are unacceptable for transportation and checked baggage with/without carrier's knowledge includes jewelry besides other valuable items. In fact, this is the case or the focal point which has been amply testified by plaintiff and confirmed by the witnesses of the defendant that plaintiff was resisting request of the defendants to book the valuable jewelry as checked in baggage. In fact, what defendant's motion under this paragraph suggests is that plaintiff should not have checked in his baggage with jewelry. However, it is notable that the case of plaintiff is that he was forced to book the jewelry in the checked baggage despite Ms. Vera Hall calling her supervisor James Wlodarczyk after searching the bags and inquiring about the valuable jewels and gems. Therefore, Delta's argument that he should have not booked his baggage is fatal to their own case and limitation of liability of $2,500.00 as stated on page 71 of Delta's tariff is not applicable for the reason, it was not the plaintiff who booked his baggage with valuable worth half a million dollars, rather it was defendant who knowingly compelled plaintiff to book the valuables as checked in baggage.

### D.   Bailment

Defendant in his motion has attempted to confuse the court by adding paragraph pertaining to Bailment. Defendant is suggesting that the merchandise of the plaintiff was on the consignment basis, whereas, plaintiff in his testimony has clearly stated that it was on sale or

17

return basis. Section 2-326 of New York Uniform Commercial Code has distinguished, 'Sale on approval and a sale or return transactions'.  In addition, Section 2-327 of New York Uniform Commercial Code clearly provides that the return is at a buyer's risk and expense. Meaning thereby, whatever term plaintiff used in his testimony, he clearly indicated that the merchandise he received is if not returned he needs to pay for it.

## IV.   CONCLUSION

For the reasons set forth above, plaintiff respectfully requests that the Court deny defendants motion for summary.

Date:   October 10, 2008
        New York, NY

/s/ Sanjay Chaubey, Esq.
SANJAY CHAUBEY, Esq. (SC - 3241)
Attorney for the Plaintiff
The Empire State Building
350 Fifth Avenue, Suite 5013
New York, NY 10118-5013
Phone: (212) 563-3223

TO:   Brain P. Morrissey, Esq. (BPM – 1699)
      Gallagher Gosseen Faller & Crowley
      1010 Franklin Avenue, Suite 400
      Garden City, NY 11530-2927
      Attorney for Defendants

18