UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

MOHAMED BARY,                                    Docket No. CV 02 5202

                                Plaintiff,        (Trager, J.)

              -against-

DELTA AIR LINES, INC.,

                                Defendant.

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
## <u>SUMMARY JUDGMENT OF DEFENDANT DELTA AIR LINES, INC.</u>

                        GALLAGHER GOSSEEN FALLER & CROWLEY
                              1010 Franklin Avenue, Suite 400
                              Garden City, New York 11530

*Of Counsel:*
*Michael J. Crowley*
*Brian P. Morrissey*

## TABLE OF CONTENTS

I.    **PRELIMINARY STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.   **Jurisdiction and Venue** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.   **Procedural History** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      C.   **Plaintiff's Pleadings And Testimony** . . . . . . . . . . . . . . . . . . . . . . . 2

II.   **DELTA TESTIMONIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  **SUMMARY OF LEGAL POINTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   **NO INTENTIONAL DISCRIMINATION** . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    **PREEMPTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.   **DISCRIMINATION AND A PLACE OF PUBLIC ACCOMMODATION** . . . . . . 15

VII.  **THE CONTRACT OF CARRIAGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VIII. **BAILMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IX    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abdu-Brisson v. Delta Airlines, Inc.*, 128 F.3d 77 (2nd Cir. 1997) ............................... 14

*Adicks v. S.H. Kress and Co.*, 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970) ........................................................................................................................ 7

*American Airlines, Inc., v. Wolens*, 513 U.S. 219, 130, L. Ed. 2d 715, 115 S. Ct. 817 (1995) ................................................................................................................ 13

*Anderson v. Liberty Lobby*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) ........................................................................................................................ 7

*Baker v. Greyhound Bus Line*, 240 F. Supp. 2d 454 (Dist. Ct. Md., 2003) ............. 15, 16

*Brady v. Town of Colchester*, 863 F.2d 205 (2nd Cir. 1998) ............................................ 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) ........................................................................................................................ 7

*Dressler v. MV Sandpiper*, 331 F.2d 130 (2nd Cir. 1964) ................................................ 7

*Feature Enterprises, Inc., v. Continental Airlines and International Total Services, Incorporated, a/k/a ITS, Inc.*, 745 F. Supp. 198 (S.D.N.Y. 1990) ............. 17

*Feldman v. U.P.S.*, 2008 U.S. Dist. LEXIS 30637 (S.D.N.Y., 2008) ............................ 13

*Galbut v. American Airlines, Inc.*, 27 F. Supp. 2d 146 (E.D.N.Y., 1997) ...................... 14

*Huggar v. Northwest Airlines, Inc.*, 1999 U.S. Dist. LEXIS 1026 (N.D. Ill. 1999) ...... 16

*I.L.T.A., Inc v. United Airlines, Inc.*, 739 F.2d 82 (2d Cir. 1984) ................................... 16

*Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1344 (11th Cir. 2005) ................ 14

Lufkin & Jenrette Securities, 7 F.3d 1085 (2d Cir. 1993) ................................................. 8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ................................................................................................... 11

*Morales v. TransWorld Airlines, Inc.*, 504 U.S. 375, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992) ........................................................................ 13

*Northwest Airlines Inc. v. Julie Duncan*, 531 U.S. 1058, 121 S.Ct. 650, 148 L.Ed. 2d 571 (2000) ........................................................................ 13

*Patterson v. McLean Credit Union*, 491 U.S. 164, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989) ........................................................................ 8

*Rombom v. United Airlines, Inc. Et al.*, 867 F. Supp. 214 (S.D.N.Y., 1994) ................. 14

*Shotz, et al v. American Airlines, Inc.*, 420 F.3d 1332 (11th Cir 2005) ........................... 12

*Tawfik v. Southwest Airlines, Inc.*, 1999 U.S. Dist. LEXIS 5705, (No. Dist. Calif., 1999)........................................................................8, 9,10

## FEDERAL STATUTES

42 U.S.C. §2000(d) ........................................................................ 12

42 U.S.C. § 2000a(b) ........................................................................ 15

14 C.F.R. §107, 108 ........................................................................ 10

28 U.S.C. § 1332 ........................................................................ 1

28 U.S.C. § 1391(a) ........................................................................ 1

49 U.S.C. § 1305 ........................................................................ 13

49 U.S.C. § 41713(b)(1) ........................................................................ 13

42 U.S.C. § 1981 ........................................................................ 2, 9

Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000 (d)) ...................................... 2

Fed. R. Civ. P. 56 ........................................................................ 1

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ........................................ 15

## MISCELLANEOUS

New York's Civil Rights Law § 1909, Article 4 <u>et. seq</u> ................................... 2, 14, 15, 18

## I.    **PRELIMINARY STATEMENT**

Defendant, Delta Air Lines, Inc., ("Delta") by its attorneys Gallagher Gosseen Faller &

Crowley moves pursuant to Fed. R. Civ. P. 56 and the local rules of this Court for an Order

granting Summary Judgment to Delta and dismissing plaintiff's Amended Complaint dated July

9, 2003.

### A.   **Jurisdiction and Venue**

Plaintiff Mohamed Bary is a Sri Lankan national residing in the State of New York, and

defendant Delta is a foreign corporation doing business in the State of New York.  Jurisdiction is

based upon diversity of citizenship (28 USC § 1332) and the alleged amount in controversy

exceeds seventy-five thousand dollars.  Venue is proper pursuant to 28 U.S.C. § 1391(a).

### B.   **Procedural History**

Plaintiff commenced the action by the filing in this Court of a Summons and Complaint

(without jury demand) dated September 26, 2002.  During discovery, the matter was stayed by

bankruptcy proceedings, and by order of this Court (Trager, J.) dated April 24, 2008, plaintiff's

claims were reopened (ECF #47).

Early in this case, Delta wrote to this Court (Dearie, J.) by a letter dated November 22,

2002 requesting permission to strike certain of plaintiff's pleadings within the Complaint which

were copied from a matter pending in California (Bayaa and American - Arab Anti-

Discrimination Committee v. United Airlines, Inc).   The plaintiffs in that case sought damages

for denied boarding; whereas, in this case, plaintiff Mohamed Bary was indisputably transported

to his destination and his complaints arise out of lost jewels and gems contained in his checked

luggage.  Allegations from the Bayaa matter had no material bearing on plaintiff's allegations in this case.  By Minute Entry of this Court dated June 12, 2003 (ECF #9), plaintiff was directed to strike out unrelated allegations and submit an amended complaint.  As will be seen further in this motion, the plaintiff's remaining references in the amended complaint are unavailing for purposes of raising an evidentiary triable issue of fact in this matter.

**C.**   **Plaintiff's Pleadings And Testimony**

The plaintiff's amended complaint contains five causes of action as follows:

| | | |
|---|---|---|
| a. | Count I: | 42 U.S.C. § 1981; |
| b. | Count II: | Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000 (d); |
| c. | Count II: | New York Civil Rights Law  §1909; |
| d. | Count IV: | Negligence; and |
| e. | Count V: | Bailment. |

The Amended Complaint dated July 9, 2003 (Exhibit "A") provides at paragraph 10 that plaintiff Mohammad Bary is "an experienced businessman and trader in precious gems and jewels" and "..... has participated in more than 40 expositions held in various states of the United States of America."[1]

On November 8, 2001, plaintiff went to LaGuardia Airport for purposes of his traveling to Denver, Colorado, where he was to participate in the Jewel & Gem show scheduled for

---

[1] Delta's Answer to Amended Complaint dated August 18, 2003 is annexed as Exhibit "B".

-2-

November 9-11, 2001 at the Denver Merchandise Mart (plaintiff's EBT transcript is annexed as

Exhibit "C").  Plaintiff's scheduled flight was a late morning departure, but since plaintiff arrived

early at the airport, he inquired about taking an earlier flight, and Delta accommodated him in

that request (EBT pages 74-75, 81).  Plaintiff flew on Delta flight #405 from LaGuardia to

Cleveland, where he connected with Delta flight #1497 to Denver.

At the LaGuardia ticket counter, Delta Customer Service Agent Vera Hall advised

plaintiff that due to security reasons, his baggage had to be hand searched by the security guard.

Plaintiff concedes that on prior flights during the time period from September 11, 2001 through

November 8, 2001, his bag had been similarly searched on other prior occasions by other air

carriers (EBT pgs. 68-69 ).  One of the two bags which plaintiff brought to the airport had an

external chain and lock on it (EBT pg. 76).  (It was in this bag that plaintiff alleges he had packed

a variety of precious gems and jewels which he possessed on a consignment basis from Sri

Lankan distributors).  Plaintiff's complaint at paragraph 14 states that the "security agent also

called the check-in clerk who inquired about the purpose of carrying such precious gems and

jewels for which plaintiff had sufficient and satisfactory information, invitation and brochure

reflecting [his travel to the gem show]."

Both of Mr. Bary's bags were brought over to a security area (which plaintiff claims was

open to public view) and hand screened by a security guard.  The security guard had on a tee

shirt.  It did not appear to be a Delta uniform (pg. 86).  As to Ms. Hall, and according to the

plaintiff, Ms. Hall appeared to be African American.  Plaintiff alleges that Ms. Hall told the

plaintiff "you are not going to take any bags on the flight."  The plaintiff summarized his feelings at that point as follows:

> "At that point, I was really, really upset.  I did not know what to do.
> Because everybody was looking at me and then I was really singled out
> and I asked her why it was only for me.  And how about the other
> passenger, white passengers who was going.  I know I said to her how
> about the other passengers.  She said, you know, who we want and if we
> we allow to carry-on baggage, you know, if we want that is our decision."

(EBT, pgs. 90-91)

According to the plaintiff, Ms. Vera Hall did not tell the plaintiff why he had to check the bag (EBT, pg. 103) other than to say that the plaintiff was on a random check list (EBT, pg. 104). With regard to the plaintiff's claim of discrimination, his testimony is as follows:

> Q.    Is the fact that they did not allow you to take a carry-on bag
>       on the flight the sole basis of what you're claiming makes
>       the discrimination claim?
>
> A.    Yes, because it has valuables and it was carry-on size.  It did
>       not - - I mean, yeah. That's - -
>
> Q.    Do you understand my question?
>
> A.    Yeah.
>
> Q.    I am just trying to narrow it down, so we know what we're
>       talking about, what you're claiming was the discrimination?
>
> A.    Yes.
>
> Q.    So you can talk to your attorney if you would like, but
>       I just want to know, is that the sole basis, when I say sole,
>       I mean the only basis of discrimination is the fact that
>       Delta told you that you couldn't take on a carry-on bag?
>       Was there anything else you're claiming was discriminatory

-4-

in the conduct, in what was said to you? I just want to make sure I understand what you're claiming. And then if there something other than the - I understand what you are saying about the bag not being allowed on, I understand that. But if there is something else you're claiming you think was discriminatory, I just want to explore it.

A. It was negligence by them after seeing the valuables. That's one thing. And secondly, like everybody else was allowed, you know and I was not allowed and basically, I was not informed of anything like, you know, of that I had to take excess insurance or what not. I was basically put on.

(EBT, pgs. 107-108)

After the plaintiff boarded his first flight to Cincinnati, he asked the flight attendant about why he had to check his luggage, and the flight attendant was unable to provide an answer (EBT, pgs. 114-115). The plaintiff made no complaints to anyone at Delta Airlines about discrimination or claims of discrimination on the date of the alleged incident, November 8, 2001 (EBT, pg. 116). Indeed, after arriving at Denver, plaintiff met a friend who took him to the Merchandise Mart where the plaintiff prepared for his trade show. (The friend had shipped his jewelry to the Merchandise Mart). It was not until the following day that plaintiff allegedly discovered the missing jewels and gems (EBT pg. 152).

## II.  **DELTA TESTIMONIES**

Delta's Customer Service Agent Vera Hall testified that when plaintiff Mohammad Bary presented himself at the ticket counter on the morning of November 8, 2001, Ms. Hall entered Mr. Bary's reservation information into the computer at the ticket counter, along with Mr. Bary's information that he had two pieces of luggage. (Ms. Hall's deposition testimony is annexed as

"Exhibit "D") . The information Ms. Hall received back on the computer indicated that Mr. Bary was a "selectee." Ms. Hall understood that the designation of "selectee" was part of the federal government's mandated security program, and that program required the luggage of selectees to be hand searched. Mr. Bary objected to a search of his luggage, and Ms. Hall called her supervisor.

Delta Customer Service Supervisor James Wlodarczyk testified that after Ms. Hall contacted him about a hand search of Mr. Bary's luggage, and after talking with Mr. Bary, Mr. Wlodarczyk learned that Mr. Bary was a merchant of jewels and gems, and was carrying such merchandise with him, and was therefore reluctant to submit to a search of his luggage. (Deposition of James Wlodarczk is annexed as Exhibit "E"). Mr. Wlodarczyk explained that such a search could be done in a secure area, and Mr. Wlodarczyk requested that a screener and supervisor from the third/non-party security company conduct the search. It is noted that Mr. Wlodarczyk's last observation of plaintiff Bary is that he left the security screening area with his bag containing the jewels and gems, and was walking to the boarding gate with that bag in his hands. (For purposes of this motion, Delta recognizes that plaintiff claims he did not bring carry-on baggage on board the aircraft, however, Delta submits that there is no evidence of intentional discrimination sufficient to deny the requested relief.)

### III.   SUMMARY OF LEGAL POINTS

Delta is an air carrier engaged in the transportation by air of persons, property and mail in interstate and international commerce. The plaintiff's claims emanate from the screening and transportation of plaintiff's luggage, and the manner in which that luggage was transported. The

manner in which Delta screened and transported plaintiff's baggage necessarily concerns airline

security matters ("sensitive security information"), airlines service including baggage services,

federal preemption, and the contract of carriage in place between plaintiff and Delta.


The general legal analysis to be applied is well known. Summary judgment shall be

granted if the pleadings, depositions and other materials pertinent to the litigation show that there

is no genuine issue of any material fact and that the moving party is entitled to judgment as a

matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 91 L.Ed. 2d 265, 106 S. Ct. 2548 (1986).

The burden of demonstrating that no factual dispute exists rests on the party seeking summary

judgment. Adicks v. S.H. Kress and Co., 398 U.S. 144, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970).

The non-moving party must present affirmative, factual evidence that if believed by the trier of

fact would support a verdict in favor of the non-movant. Dressler v. MV Sandpiper, 331 F. 2d

130 (2nd Cir. 1964), and may not rely upon unsupported denials or allegations. Anderson v.

Liberty Lobby, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). The reviewing Court

must view the evidence in the light most favorable to the non-moving party, and

draw all factual inferences in that party's favor. Brady v. Town of Colchester, 863 F. 2d 205 (2nd

Cir. 1998).


Under such analysis in this case, the plaintiff's claims of intentional discrimination fail to

evidence a triable issue, and Delta otherwise operated within the established federal security

framework when it hand screened plaintiff's luggage. The plaintiff's allegation that he was not

allowed to bring a suit case on board the aircraft is, without more, insufficient to raise a triable

question of national origin discrimination.  As to the plaintiff's claims about the provision of that

baggage service, those claims are also generally preempted, and the loss of transported baggage

is limited to amounts set by tariff.  Further, plaintiff claims a loss of hundreds of thousands of

dollars in jewels and gems, but plaintiff himself has admittedly only ever paid a limit amount for

that merchandise.

## IV.   NO INTENTIONAL DISCRIMINATION

With regard to plaintiff's first cause of action, claiming intentional discrimination,

the elements of such a claim under § 1981 are (1) plaintiff's membership in a

racial minority; (2) an intent to discriminate on the basis of race by the defendants; and

(3) discrimination concerning one or more of the activities enumerated in § 1981, including the

right to make and enforce contracts.  (Lufkin & Jenrette Securities, 7 F.3d 1085 (2d Cir. 1993)).

Here, plaintiff's claim must fail because plaintiff cannot provide evidence of an intent to

discriminate on the basis of race.  There is no evidence of any racial animus by any Delta

employee or agent.  The plaintiff's designation as a "selectee" for purposes of security screening

raises no inference of racial overtones because the security procedures in place on November 8,

2001 were part of a federally mandated security screening program.

Under  § 1981, plaintiff must allege and support facts that would support an inference that

defendants intentionally and purposefully discriminated against him.  Patterson v. McLean Credit

Union, 491 U.S. 164, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989); See also, Tawfik v. Southwest Airlines, Inc., 1999 U.S. Dist. LEXIS 5705 (No. Dist. Calif., 1999).

In Tawfik, supra, the plaintiff likewise sought damages in connection with the security inspection of his luggage. The plaintiff was a citizen of Egyptian national origin, and he was advised by a gate agent that the computer system had randomly selected him and his briefcase to be searched before boarding. Similar to the instant matter, plaintiff Tawfik alleged prior similar searches on other occasions during the four months before his travel. The Court in Tawfik dismissed on 12(b)6 grounds and held that:

> Plaintiff attempts to raise an inference of discrimination based on the conclusory allegations contained in the original complaint, which the Court ordered plaintiff to amend. Although plaintiff added some additional facts to his first amended complaint, those allegations are conclusory and do not support an inference that defendant intentionally discriminated against him. The mere allegation that plaintiff was subject to a baggage search on two different occasions, by two different agents of defendant does not give rise to an inference of intentional discrimination.
>
> Plaintiff also failed to add facts which would allow for an inference that search was done to limit to abridge his right to enforce the contract. Section 1981 requires that the defendant's action interfere with the plaintiff's right "to make an enforce contracts" 42 U.S.C. § 1981. Plaintiff's first amended complaint does not contain any facts indicating that his right to use his ticket or boarding pass was interfered with or that he was prevented from boarding his flight. Neither does plaintiff allege that the defendant's search delayed him in anyway. Although plaintiff may have suffered some embarrassment due to being subjected to a search of his carry-on baggage on two separate occasions, this embarrassment does not amount to an interference with his right to enforce his contract with defendant.

For plaintiff's claim to survive, plaintiff must demonstrate that this embarrassment prevented him from being able to "make and enforce contracts" as white citizens are able to. The allegations contained in plaintiff's first amended complaint are conclusory and failed to establish that individuals of plaintiff's national origin are unable to enjoy contracts with defendant to the same extent as white citizens. Although plaintiff maintains that he is unaware of any other individuals being subject to search on August 27, 1997, plaintiff does not make the same allegation regarding the August 25, 1997 search. The Court cannot infer from these facts that plaintiff was the only individual subject to a baggage search at the departure gate.

In addition, as stated by defendant in its opposition to plaintiff's complaint, security checks are required by the FAA. See, 14 C.F.R. § 107, 108. Warrantless searches of passengers and their carry-on luggage are permitted as administrative searches, so long as they are reasonable. [Citation omitted]. Although such security measures will often subject innocent persons to inconvenience and scrutiny, this is the price passengers pay for the degree of airline security afforded to them. The fact that the defendants selects individuals at random for search does not give rise to the inference that it intended to discriminate again plaintiff in this instance.

The above analysis and legal points are well taken in the instant matter. Here, plaintiff's deposition testimony indicates exactly the type of claim of embarrassment that the Court in Tawfik rejected. And while plaintiff Bary alleges that he was unable to bring carry-on luggage on board the aircraft, plaintiff Bary's claims ignore that Delta has the discretion to restrict or limit a passenger's carry-on luggage. Finally, just as the Court in Tawfik rejected plaintiff's factual references to searches of himself on other prior occasions, and searches of his family members on other prior occasions, so too in this matter is plaintiff Bary's references to the Bayaa case unavailing. As stated above, the plaintiff's in Bayaa were generally prevented from boarding the aircraft, and by contrast in this case, plaintiff Bary's deposition testimony reveals

-10-

that nothing occurred on either the flight to Cleveland, or the second flight to Denver, that would

indicate any disparate treatment.  The plaintiff's vague and casual observation that other

passengers had brought carry-on luggage on the board the aircraft fails to provide any evidence of

national origin discrimination.


It may be noted that it has been held outside of the Second Circuit that a plaintiff can

survive summary judgment on his § 1981 race discrimination claim either with direct evidence of

discrimination or with indirect evidence of discrimination under the McDonnell Douglas

framework.  (McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668

(1973)); Huggar v. Northwest Airlines, Inc., 1999 U.S. Dist. LEXIS 1026.  Here plaintiff Bary

presents no direct evidence of discrimination.  His assertions about his security screening and

conversations with customer service agent Vera Hall indicate no words of racial animosity were

exchanged, no reference was made to Mr. Bary's ethnicity, and indeed Mr. Bary was an

experienced passenger on commercial air flights and had previously been required to submit to

federally mandated security screening on other occasions with other airlines.


If applicable, the McDonnell Douglas indirect approach requires a three part inquiry:

(1) plaintiff must establish a prima facie case of discrimination by a preponderance of the

evidence, (2) the burden then shifts to the defendant to come forward with evidence with a

legitimate, non-discriminatory reason for its action, and (3) the plaintiff must then prove by a

preponderance of the evidence that the  legitimate  reasons offered by the defendant were not its

true reasons, but were a pretext for discrimination.  Plaintiff Bary will be unable to meet his

-11-

burden under this analysis because the legitimate, non-discriminatory reasons for the federal security screening provided to Mr. Bary was that he was deemed a "selectee" under the federal security framework in place for all air carriers.  Plaintiff Bary's claims will fail because he will ultimately be unable to establish that the mandatary security screening was a "pre-text" for race discrimination.

All the above reasons for dismissal of plaintiff's § 1981 claim apply as well and as completely to Count II of plaintiff's Amended Complaint, alleging a violation of 42 U.S.C. Section 2000(d), which concerns the issue of discrimination and federally financed programs. Here, plaintiff Bary's complaints arise from an incident on November 8, 2001, which followed fairly soon after the September 11th attacks, and the infusion of federal financing into the airline industry.  Delta does not contest the receipt of federal financing, however, this claim under 42 U.S.C. § 2000(d) is otherwise unavailing to the plaintiff for the reasons stated in Shotz, et al v. American Airlines, Inc., 420 F.3d 1332 (11th Cir 2005), which draws a crucial distinction between federal financing or subsidy, and "compensation."  Plaintiffs in Shotz brought suit for alleged disability discrimination, and the Eleventh Circuit affirmed dismissal of plaintiffs' claims, finding that ". . . the relevant inquiry is Congress' intent in passing the Stabilization Act, not how the defendant airline carriers described or handled the funds and financial benefits they received (citations omitted)." Id. at 1337.

Consequently, in this instant matter, plaintiff's efforts to inject issues of federal financing or subsidies in connection with the Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42, 115 Stat. 230 (2001) are unavailing.

-12-

Finally, the plaintiff has offered no evidence that he has suffered any damage as a result of the alleged discrimination. The only real damage he alleges in his action is the loss of property, and his claim for that loss is limited by tariff.

## V. **PREEMPTION**

In 1978, Congress enacted the Airline Deregulation Act ("ADA"), which included a preemption clause providing:

> "No state..... shall enact or enforce any law, rule, regulation, standard or other provision having the force of effect of law relating to rates, routes, or services of any air carrier having authority... to provide interstate air transportation" (49 U.S.C. § 1305).

In 1994, Congress revised and re-codified this section as 49 U.S.C. § 41713(b)(1) stating:

> "A state... may not enact or enforce a law, regulation or other provision having the force and effect of law, related to a price, root or service of an air carrier."

The United States Supreme Court examined the ADA preemption clause in <u>American Airlines, Inc., v. Wolens</u>, 513 U.S. 219, 130, L. Ed. 2d 715, 115 S. Ct. 817 (1995); and <u>Morales v. TransWorld Airlines, Inc.</u>, 504 U.S. 375, 119 L. Ed 2d 157, 112 S. Ct. 2031 (1992). However, it is generally considered that the Supreme Court has not directly addressed the definition of "service" within the meaning of § 41713(b)1 (<u>See</u>, <u>Northwest Airlines Inc. v. Julie Duncan</u>, 531 U.S. 1058; 121 S. Ct. 650, 148 L. Ed. 2d 571 (2000); <u>Feldman v. U.P.S.</u>, 2008 U.S. Dist. LEXIS 30637 (S.D.N.Y., 2008).

The position of the United States Court of Appeal for the Second Circuit is that the ADA's preemption provision must be applied on a case-by-case basis, and that local laws must "directly affect prices, routes, or services" to be preempted. Abdu-Brisson v. Delta Airlines, Inc., 128 F. 3d 77, 86 (2nd Cir. 1997). Both the United States Court for the Eastern District of New York and the United States District Court for the Southern District of New York follow the three part test for preemption established in Rombom v. United Airlines, Inc. et al., 867 F. Supp. 214 (S.D.N.Y., 1994). As Judge Joan Azrack of this Court explained in Galbut v. American Airlines, Inc., 27 F. Supp. 2d 146 (E.D.N.Y., 1997), the tri-partite test for preemption is that the Court:

> . . must first determine whether the activity at issue in the claim is a service. If the activity is deemed to be a service, the Court must then ascertain whether the claim affects the airline service directly or tenuously, remotely, or peripherally. Finally, the Court must determine whether the underlying tortuous conduct was reasonably necessary to the provision of the service.

In Galbut, Judge Azrack considered the allegedly tortious conduct surrounding that plaintiff's claims arising out of a seating upgrade and security measures taken against the plaintiff while on board the aircraft. Judge Azrack ultimately found that the allegedly tortious conduct furthered the provision of "service" in a reasonable manner. In this case, so too did the actions of Delta employee Vera Hall and Customer Care Supervisor Jimmy Wlodarczick further the provisions of baggage service, under the guidelines for security screening mandated by the federal government, in a reasonable manner. See, Koutsouradis v. Delta Air Lines, Inc., 427 F.3d 1339, 1344 (11th Cir. 2005) (discrimination claim based on treatment of plaintiff during search of checked baggage pre-empted). In that decision, the Eleventh Circuit held that "Baggage handling, passenger handling and courteousness relate to the heart of services that an airlines provides" Id. at 1344, nt. 2.

-14-

## VI.  DISCRIMINATION AND A PLACE OF PUBLIC ACCOMMODATION

Plaintiff has asserted a state law discrimination claim under New York's Civil Rights

Law  § 1909, Article 4 et. seq. ("Unlawful Deprivation of Access to and/or Discrimination in

Furnishing of a Public Accommodation and/or Public Facility").  Plaintiff specifically alleges at

paragraph 35 that:

> Delta Flight # DL0405, from which plaintiff was disallowed for
> traveling [sic] with a carry-on cabin luggage on November 8, 2001
> is a "place of public accommodation" within the terms of New
> York Civil Right 1909, Article 4.[2]

However, it is well settled that an aircraft is not a place of public accommodation under

Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.  Congress defines places of public

accommodation in 42 U.S.C. § 2000a(b) to include lodging establishments, food consumption

establishments, exhibition or other entertainment establishments, and establishments located

within the premises of the previously listed three establishments which serve patrons of those

establishments.

Not included in this list are modes of transportation such as trains, planes or buses, and

courts have resisted applying this title to them.  See, e.g., Baker v. Greyhound Bus Line, 240 F.

Supp. 2d 454, 455 (Dist. Ct. Md., 2003); Huggar v. Northwest Airlines, Inc., 1999, W.L. 59841

(N.D. Ill. 1999) (holding that "[o]f the fifteen specific examples [of public accommodation listed

entitled to], none of them remotely resemble an airlines [sic]" and "there is nothing even close to

---

[2]It is noted New York's Civil Rights Law (McKinneys Book 8) contains an "Article 4"
("Equal Rights in Places of Public Accommodation and Amusement"), yet the Section numbers
therein are §§ 40-45. No § 1909, as referenced by plaintiff herein, is included herein.

a conveyance of transportation, such as buses or trains in the statute"). For similar reasons

including federal preemption, plaintiff's claim herein under New York's Civil Rights Law §1909

must equally fail.

## VII.   THE CONTRACT OF CARRIAGE

Accompanying this motion is the domestic tariff for Delta Air Lines in effect on the date

of this incident (Affidavit of David A. Seiler is annexed as Exhibit "H"). The tariff was duly

published thereby creating a binding contract between the parties (i.e. plaintiff and Delta). It is

well-settled that a valid tariff constitutes a binding contractual tie and that the limitations on

liability apply whether the action sounds in tort or contract. I.L.T.A., Inc v. United Airlines, Inc.,

739 F. 2d 82, 86 (2d Cir. 1984).

At page 73 of the tariff, it is plainly stated that the following items are considered

unacceptable for transportation and checked baggage with/without carrier's knowledge:

> money, securities, negotiable papers, irreplaceable business
> documents/books/manuscripts/publications/jewelry/silverware,
> precious metals, paintings and/or works of art, life saving
> medication, etc. (underline added).

The tariff continues at subsection (f) by stating:

> Delta is not responsible for jewelry, cash, camera equipment or
> other similar valuable items contained in checked or unchecked
> baggage, unless excess evaluation has been purchased. These
> items should be carried by the passenger.

-16-

In <u>Feature Enterprises, Inc., v. Continental Airlines and International Total Services,</u>

<u>Incorporated, a/k/a ITS, Inc.,</u> 745 F. Supp. 198 (S.D.N.Y. 1990), a passenger checked $175,000

in jewelry belonging to the plaintiff corporation.   The corporation's practice was to transport all

jewelry cases as regular passenger luggage without notice to the airline.  So too in the instant

matter was it Mr. Bary's practice to transport his jewelry cases personally, although Mr. Bary

claims to have previously taken the jewelry on board with him as carry-on luggage.


Nevertheless, the Court in <u>Feature Enterprises</u> agreed that an air carrier may duly limit its

liability for lost domestic baggage.  In this case, Delta's tariff at § J(1)(A), page 71, duly limits its

liability to $2,500.00.  The plaintiff can offer no evidence that Delta did not provide notice of the

limitation.  Accordingly, any loss sustained by plaintiff relating to the allegedly lost gems must

be limited to $2,500.


## VIII.   BAILMENT

The plaintiff's testimony about his possession of the subject gems and jewels is as

follows:

>He obtained the articles " . . . on a consignment basis.  On a sale, I
>return (EBT pg. 26);
>
>"There is no written contract.  They give it toe me on memo and
>that's how I used to work because have been doing this business for
>the last so many years, basically on trust." (EBT pg. 28);
>
>". . .They always write on and paper the number and the name and
>the, you know, and the price and I sign for this." (EBT pg. 28); and

-17-

"Whatever the price that is put in is the price that I need to pay them.
Whatever I seem on top of it is mine "and" when I take it, they tell
me this is the price and if I life, if I feel I can sell, I take it.
Otherwise, I don't take it." (EBT pg. 30)

Plaintiff further testified that his business, Bary Gems, Inc., did not carry any insurance for lost

or stolen jewels (EBT pg. 32) and that no lawsuits have been brought against him by the Sri

Lankan vendors in the approximately seven years since November 8, 2001.  As stated above, the

alleged damages herein are limited by tariff.  However, to the extent that plaintiff claims that

hundreds of thousands of dollars of jewelry was lost, it is noted that plaintiff has allegedly paid

the Sri Lankan vendors only $13,847.76.

At plaintiff's deposition, he indicated that he would advise the defendant of the amount

of money he has paid out-of-his-pocket to the Sri Lankan vendors for the lost jewels (a blank

space was left in plaintiff's transcript at pg. 155 so that plaintiff could review his documents and

insert the total amount.)

Plaintiff subsequently provided to our office a box of his records, which contained

copies of four checks from Bary Gems. Inc. dated during the months following this alleged

occurrence, totaling $2,748.88 (Exhibit "F"), and eleven checking deposit slips totaling

$11,098.88 (Exhibit "G").  Therefore, according to plaintiff's own documentation, his business

sustained total financial damages of $13,847.76.

## IX.   **CONCLUSION**

**WHEREFORE**, it is respectfully requested that the plaintiff's three Civil Rights

allegations (Section 1981, Section 2000(d) and New York's Civil Rights Law Section 1909)

are respectfully requested to be dismissed as plaintiff cannot show intentional discrimination

nor is Delta's security operation at the airport considered to be a place of public

accommodation, and plaintiff's claim for punitive damages and injunctive relief in the prayer

for relief must likewise be dismissed.


Further, plaintiff's common law negligence claim should be preempted because of the

baggage service at issue.  Finally, the plaintiff's bailment claims must fail because Delta's valid

contract of carriage provides that jewels and gems are not to be checked as luggage, and any

loss of such personal property is limited pursuant to the contract of carriage to $2500, and even

if that limitation is not enforceable herein, plaintiff has only suffered an demonstrable

economic loss of $13,000.

For these reasons, it is respectfully requested that summary judgment be granted, or that plaintiff's claims be otherwise limited as set forth herein, together with such other and further relief as deemed just and proper by this Court.

Dated: Garden City, New York
September 5, 2008

<div style="margin-left: 40%">

**GALLAGHER GOSSEEN**
**FALLER & CROWLEY**

By: _____

**MICHAEL J. CROWLEY  (MC/2821)**
**BRIAN P. MORRISSEY (BPM/1699)**
A Member of the Firm
*Attorneys for the Defendant*
**DELTA AIR LINES, INC.**
1010 Franklin Avenue
Garden City, NY 11530-2927
(516) 742-2500

</div>

**TO:**     Sanjay Chaubey, Esq.
**LAW OFFICE OF SANJAY CHAUBEY**
*Attorney for Plaintiff*
Empire State Building
350 Fifth Avenue, Ste. 5013
New York, NY 10118
(212) 563-3223
**Attorney I.D. No. (SC-3241)**

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )
                            ) ss.:
COUNTY OF NASSAU   )

Kristin Cooper, being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age and resides at Glen Oaks, New York.

On September 5, 2008, deponent served the within **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT DELTA AIR LINES, INC.** upon:

> **Sanjay Chaubey, Esq.**
> **Law Office of Sanjay Chaubey**
> *Attorney for Plaintiff*
> **Empire State Building**
> **350 Fifth Avenue, Ste. 5013**
> **New York, NY 10118**

being the addresses designated by said attorneys/parties for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in a post office official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

KRISTIN COOPER

Sworn to before me this
5TH day of September, 2008.

Notary Public

LORETTA D'ANNA
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY
LIC. #01DA6033910
COMM. EXP. DEC. 6. 20__

-20-