UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MOHAMED BARY,

    Plaintiff

v.

DELTA AIR LINES, INC.,

    Defendant

DOCKET NO.: 02-CV-5202

MAGISTRATE JUDGE MARILYN D. GO

# POST-TRIAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF DELTA AIR LINES, INC'S MOTION TO DISMISS ALL CLAIMS

Connell Foley LLP
Attorneys for Delta Air Lines, Inc.
888 Seventh Ave., Suite 3401
New York, New York 10106
(212) 262-2390

*Of Counsel*:
Michael J. Crowley
Michael Bojbasa

2492781-01

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................... 1

LEGAL ARGUMENT ........................................................................................................... 2

    POINT I
    PLAINTIFF'S CLAIMS OF DAMAGES FLOW FROM AN ALLEGED
    INTENTIONAL ACT BY DELTA ............................................................................ 2

    POINT II
    PLAINTIFF'S CLAIM FOR DISCRIMINATION ..................................................... 3

    POINT III
    PLAINTIFF'S PROPERTY LOSS CLAIM ............................................................... 6

    POINT IV
    CREDIBILITY OF THE CLAIMS IS IN QUESTION .............................................. 9

CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

*Cases*

Bello v. U.S. 93 Fed. Appx. 288 (2nd Cir. 2004) .................................................................. 4

Cifarelli v. Town of Babylon, 93 F.3d 47 (2nd Cir. 1996) ..................................................... 8

Ierardi v. Sisco, 119 F.3d 183 (2nd Cir. 1997) ....................................................................... 6

Kirkman v. Astoria General Hosp., 204 A.D.2d 401 (2nd Dept. 1994) ................................. 6

Muller Boat Works, Inc. v. Unnamed 52' House Barge, 464 F.Supp.2d
   127 (E.D.N.Y. 2006) .......................................................................................................... 7

N.X. v. Cabrini Medical Center, 97 N.Y.2d 247 (2002) ....................................................... 6

R.B.K. Argentina S.A. v. M/V Dr. Juan B. Alberdi, 935 F.Supp. 358
   (S.D.N.Y. 1996) ................................................................................................................. 7

Rivello v. Waldron, 47 N.Y.2d 297 (1979) ........................................................................... 4

*Statutes*

42 U.S.C. §1981 ................................................................................................................ 4, 6

## PRELIMINARY STATEMENT

The defendant, Delta Air Lines, Inc. ("Delta"), respectfully submits this post-trial Memorandum of Law in further support of Delta's motions made at trial to dismiss the various claims asserted by plaintiff in this action, as modified by plaintiff's evidence at trial. As the Court has not requested that the parties submit any briefing with regard to the legal standards to be applied to plaintiff's claims, Delta will not brief those issues herein. However, it is Delta's position that no matter the legal standard (statutory, federal common law, New York State common law, or any other) used to measure the sufficiency of plaintiff's claims and proof at trial, the end result is the same. Plaintiff has not made out a case against Delta on any of the claims asserted at trial. Accordingly, Delta's motions to dismiss the plaintiff's case in its entirety, made at the close of plaintiff's evidence and renewed again at the close of all evidence in the case, must be granted as a matter of law and fact.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS OF DAMAGES FLOW FROM AN ALLEGED INTENTIONAL ACT BY DELTA

Despite the multiple amended complaints served by plaintiff in this case and the alternative theories for his claims asserted therein, the plaintiff's proof at trial established that he is claiming, as the factual predicate for his damages, an intentional act by Delta employee Vera Hall. During the hand search of plaintiff's bag, with an alleged "security guard" never identified being present, it is alleged that they forced plaintiff to check his bag containing gems and stones with the express intent of stealing those gems and stones from plaintiff (see Trial Transcript at pp. 264, 272 and 315-316). Although the plaintiff attempted to plead his case in various forms and theories prior to trial, the plaintiff's claims to be decided by this Court must be construed in reference to the actual proof submitted at trial. If the plaintiff, his only witness at trial, testified that his claim actually was intentional theft by Delta's employee, claims which do not flow from the alleged intentional theft should be disregarded.

The plaintiff's claim of intentional theft necessarily impacts upon both his causes of action for discrimination pursuant to 42 U.S.C. §1981 and his claims for money damages related to the loss of $373,186.00 in gems and stones. The plaintiff's separate claim for punitive damages has already been dismissed by the Court during trial and will not be addressed herein. Although the plaintiff's direct testimony at trial intertwined the separate claims he is making against Delta, the claims will be addressed here separately for purposes of clarity and specific recitation to the evidence submitted at trial.

2

## POINT II

### PLAINTIFF'S CLAIM FOR DISCRIMINATION

The plaintiff asserts a claim against Delta for intentional discrimination under 42 U.S.C §1981. All claims for discrimination based on other theories and statutes were dismissed by Judge Trager prior to trial. In order for the plaintiff to make out a *prima facie* case for discrimination under this federal statute, the plaintiff must show that the conduct of Delta was intentionally discriminatory. The plaintiff did not come close to meeting this burden at trial and his discrimination claim therefore must be dismissed.

Plaintiff claims that Delta's ticket agent, Vera Hall, forced him to check his bag containing approximately a half million dollars of gems and stones. Plaintiff had intended to carry the bag onto the aircraft, as he has done on many previous flights, including some on Delta Air Lines (Trial Transcript at p. 274). At trial, plaintiff testified that his claim really was that Ms. Hall, and her unidentified accomplice, made him check his bag with the intent of stealing the gems and stones once the bag was out of plaintiff's possession (Trial Transcript at 264 and 272). Plaintiff also admitted on cross-examination, that the gems and stones have value, which is not dependent upon the race, ethnicity, or religious beliefs of the item's owner (Trial Transcript at pp. 279-281). As the evidence at trial demonstrated, Delta denies that the plaintiff in fact was forced to check the subject bag. (Trial Transcript at pp. 247-248). However, Delta respectfully submits that even if the Court were to find that plaintiff was asked to check the subject bag by Ms. Hall so that she could steal his property, such act would not be discriminatory as contemplated and protected under 42 U.S.C.§1981. As the Court is aware, §1981 protects against intentional discriminatory conduct based solely upon race. However, if the plaintiff's claims at trial are true, then Ms. Hall forced plaintiff to check his bag in order to intentionally steal the gems and stones, having no discriminatory intentions at all, but rather only intending to

3

steal the items. Delta respectfully submits that such act would not be a violation of 42 U.S.C. §1981, even if criminal in nature. Further, even if Ms. Hall plotted to steal from Mr. Bary as he claimed at trial, such an act would be beyond the scope of her employment with Delta and Delta would therefore bear no liability for her conduct. The plaintiff chose not to sue Ms. Hall directly, nor did he seek to identify or bring suit against the unnamed "security guard" who he alleges to have been Ms. Hall's accomplice in the alleged theft. Moreover, the evidence at trial does not establish any prior history of Ms. Hall stealing from Delta customers, nor was there any testimony or claim made that Delta negligently or improperly hired and retained Ms. Hall as an employee. Accordingly, if plaintiff's trial evidence is to be believed, Vera Hall intentionally made him check his bag, not because of his race, ethnicity or religion, but because she wanted to steal his valuable gems and stones.

Delta therefore submits that if plaintiff's allegations against Ms. Hall are believed by the Court, those facts cannot support a claim of intentional discrimination under 42 U.S.C. §1981 and, even if such support could be found, the conduct of Ms. Hall would be outside the scope of her employment and therefore Delta would not be responsible for any damages flowing therefrom. See Bello v. U.S. 93 Fed. Appx. 288 (2nd Cir. 2004) (explaining that New York law holds that an employee's tortuous acts are considered to fall within the scope of employment if 'done while the servant was doing his master's work,' quoting Rivello v. Waldron, 47 N.Y.2d 297, 302 (1979)). There was no evidence introduced by plaintiff at trial regarding any pattern and practice of such discrimination by Delta, nor any ratification of Ms. Hall's alleged criminal conduct. Simply put, the evidence submitted at trial by plaintiff cannot support a claim of discrimination under the federal statute.

2492781-01

Lastly on this point, Delta's evidence conclusively established that any communication from Ms. Hall to the plaintiff reporting an improper interpretation of federal regulations was a result of error and not ill intent. The plaintiff was designated a selectee under the federally mandated passenger screening program, CAPPS (Trial Transcript at pp. 350 and 353-354). As such, plaintiff was subject to screening procedures that other passengers who were not selectees would not encounter. Delta conceded at trial that when Ms. Hall initially told plaintiff that, as a selectee, he could not bring a carry-on piece of baggage onto the plane, she was incorrect and later learned of her error when speaking with her supervisor (Trial Transcript at pp 406-407). Although plaintiff denies the involvement of Mr. Wlodarczyk, Ms. Hall's supervisor, in any of the events which occurred on the morning of the subject incident, the testimony of both Vera Hall and Mr. Wlodarczyk were clear that it was Mr. Wlodarczyk who ultimately dealt with the plaintiff's complaints and baggage on the day in question. All three Delta witnesses who testified at trial offered the Court evidence that the federal rules regarding selectee passengers and how they were to be screened were confusing in the days and weeks following the terrorist attack on September 11, 2001 (Trial Transcript at pp. 356, 397-398, and 457-458). Accordingly, any misinformation provided by Ms. Hall to plaintiff Bary was not the result of criminal intention to steal from the plaintiff or to discriminate against him because of his race or religion, both of which Ms. Hall vehemently denied at trial, but rather confusion on Ms. Hall's part on the applicable rules put in place by the Federal Aviation Administration and her desire to follow those rules as best she could (pp 406-407).

Delta submits that there was no evidence produced at trial to support any objective basis for plaintiff's perception of discrimination, and upon which the Court could base a finding of any

intentional discrimination as required under 42 U.S.C. §1981 attributed to the defendant. Delta's motion should be granted in its entirety and plaintiff's 42 U.S.C. §1981 claim dismissed.

### POINT III

### PLAINTIFF'S PROPERTY LOSS CLAIM

As with the plaintiff's discrimination claim, evidence he submitted at trial to support the claim of lost gems and stones is inadequate to sustain his burden of proof. In the interest of brevity Delta will not address the numerous problems regarding plaintiff's attempts at proving the value of the gems and stones allegedly lost with admissible evidence. Such arguments are not necessary, as plaintiff failed to establish that Delta could be responsible for such loss, even if the Court finds the plaintiff to be truthful with regard to these claims. There are several reasons serving as the basis upon which to reject the plaintiff's property claims against Delta.

First, at trial plaintiff confirmed that his claim is in fact that Vera Hall intentionally made him check his bag and then stole or had someone else steal the subject property at issue. If true, not only would Ms. Hall's conduct not be discriminatory, it would be criminal in nature and well beyond the scope of her employment. Accordingly, Delta would not be responsible to plaintiff for the value of his lost gems and stones.[1] Ierardi v. Sisco, 119 F.3d 183, 188 (2nd Cir. 1997); N.X. v. Cabrini Medical Center, 97 N.Y.2d 247, 252 (2002); Kirkman v. Astoria General Hosp., 204 A.D.2d 401, 402 (2nd Dept. 1994) The argument that Ms. Hall's alleged conduct would have

---

[1] Plaintiff at trial attempted to offer evidence regarding the impact of this alleged property loss on his life and jewelry business. However, as was pointed out at trial by Delta, plaintiff specifically did not include a claim of lost business or other financial harm as part of his claims against Delta at trial. The Court is referred to the joint Pre-Trial Order signed by plaintiff's counsel as well as the plaintiff's deposition testimony wherein he stated the nature of his claim (See Trial Transcript at pp. 320-322 and Pre-Trial Order at ¶4). Accordingly, Delta will not address the issue of damages resulting from the property loss other than the value of the subject gems and stones stated by plaintiff in his pleadings and Pre-Trial Order. Consideration of such other claims would be prejudicial to Delta as it relied upon plaintiff's deposition testimony and the Pre-Trial Order, and therefore Delta did not prepare any trial evidence with regard to these other claims.

been beyond the scope of employment is not the only reason plaintiff's property claim should be dismissed in its entirety.

Although the defendant obviously disputes the truthfulness of plaintiff's claims in general, Delta could not offer any evidence at trial to the issue of whether the plaintiff in fact did at some point in time lose portions of the gems and stones out of his bag as he claims. However the evidence at trial clearly establishes it cannot be shown that, if any such loss actually occurred, such loss was suffered while the subject bag was in the possession of Delta, even if the Court believes that the bag was checked by plaintiff with Delta. In fact, plaintiff's testimony at deposition and trial establishes that there was a lengthy break in the chain of custody between Delta and the plaintiff, when the plaintiff checked the subject bag with the show facility in Denver overnight (Trial Transcript at pp. 257-258). This is a fact the plaintiff did not make clear to the Court during his direct testimony, but during cross-examination plaintiff admitted that he did not inspect the contents of his bag from the time he allegedly retrieved it from Delta in Denver until the next morning when he first opened the bag to set up for his show (Trial Transcript at p.258). Delta submits that this break in the chain of custody is fatal to the plaintiff's claim. See Muller Boat Works, Inc. v. Unnamed 52' House Barge, 464 F.Supp.2d 127, 147 (E.D.N.Y. 2006) (stating that no inference of negligence arises if bailee's custody or possession of the bailor's property was not exclusive), see also R.B.K. Argentina S.A. v. M/V Dr. Juan B. Alberdi, 935 F.Supp. 358 (S.D.N.Y. 1996) (holding that a transporter should not be liable for cargo loss where there was no evidence establishing when or where the loss took place).

Plaintiff's testimony is that when he retrieved the subject bag in Denver's airport, he did not inspect the contents of the bag out of fear that someone would see that he was carrying

7

valuable jewels (Trial Transcript at p. 251). The plaintiff testified that he hefted the bag in Denver's airport and that the bag felt like it was the correct weight (Trial Transcript at p. 252). Plaintiff left the Denver airport in a car rented by his friend, Mr. Jaffey, and traveled to the gem show facility (Trial Transcript at p. 253). The plaintiff did not inspect the contents of the subject bag while in the rented car with his friend (Trial Transcript at p. 253). When plaintiff arrived at the show facility, he again did not inspect the contents of his bag while at that facility on the day of the subject flight (Trial Transcript at p. 255). Plaintiff proceeded to check the bag in at the facility and left, traveling to his hotel for the night. The subject bag therefore was not inspected by plaintiff from the time he retrieved it from Delta's possession at the Denver airport up until the time he checked the bag at the show facility for overnight storage. The first time that the plaintiff inspected the contents of the bag was the day after the subject flight and after the bag had been out of his possession (and not in Delta's possession either) for over 12 hours (Trial Transcript at p. 258). Accordingly, even if the Court believes that the plaintiff did in fact suffer a loss of gems and stones, it is nothing but pure speculation to assert that the gems and stones were taken from his bag while the bag was in possession of Delta. As noted above, the evidence from plaintiff suggests otherwise. Speculation is not sufficient to sustain the plaintiff's burden of proof on this issue. Cifarelli v. Town of Babylon, 93 F.3d 47, 51 (2nd Cir. 1996). Moreover, Delta submits that it is entirely possible that plaintiff's loss was suffered, if at all, while the bag was in the possession of the show facility in Denver. Accordingly, plaintiff's claim for the value of the alleged lost gems and stones must be dismissed.

One other point raised at trial needs to be addressed. This is not a case involving an airline losing a customer's bag. The plaintiff's bag, based upon his own testimony, was returned to him in Denver by Delta Air Lines and the bag was locked, as the plaintiff had last seen it, and

8

2492781-01

appeared undisturbed (Trial Transcript at pp. 250-251). When plaintiff retrieved the bag he hefted the weight and found it to be what he thought was correct. Therefore no claim for lost baggage as a result of negligence can be made against Delta. The defendant respectfully submits further that, if the plaintiff's story is believed, the subject gems and stones must have been intentionally removed from the subject bag and were not lost in a negligent manner. It is implausible to assert that specific gems and stones were lost as the result of negligence. Plaintiff's own evidence, if believed, supports the scenario that the missing items were intentionally removed from his bag, but there is no admissible evidence to prove this was the fault of Delta.

Delta submits that no matter the type of claim plaintiff attempts to make with regard to the alleged loss of property (bailment, federal common law, New York State based negligence, etc.), the evidence simply does not support any such claim against Delta. A verdict of liability against Delta for the alleged loss of gems and stones would require basing that finding on impermissible speculation and with no admissible evidence in support. Delta is confident the Court will not do so and therefore dismissal of plaintiff's property claim is warranted.

## POINT IV

### CREDIBILITY OF THE CLAIMS IS IN QUESTION

As Delta advised the Court during opening statements, there are large questions of credibility for the Court to decide with respect to the plaintiff's own testimony and that offered in opposition to his claims. Delta submits that the plaintiff's testimony and explanation as to why certain matters were handled in a particular way, is not credible and should not form the basis of any finding in plaintiff's favor. On the other hand, the testimony of Delta's witnesses, particularly that of Ms. Hall and Mr. Wlodarcyzk, who are both retired and have no personal

stake in this matter, was very credible and instructive as to what actually occurred on the morning of November 8, 2001 in regard to plaintiff and his baggage.

Put simply, Delta has never believed plaintiff's story concerning lost property and always has known for certain that no discrimination took place on the date in question. The plaintiff was his sole witness at trial and his testimony was unsupported by any other evidence, even though several of the people he referenced during his testimony were related to him by blood or marriage. Plaintiff's uncorroborated story of events simply self-serving does not withstand even passing scrutiny from the perspective of common sense and logic. Delta suspects, but of course cannot prove, that plaintiff concocted his claims of property loss and discrimination for reasons known only to him, but with at least one motive being the request for several hundred thousand dollars in money damages. It is suggested that plaintiff seized upon the error made by Ms. Hall initially, when she issued him a luggage tag for the bag he eventually carried onto the plane. He is the only witness as to the items he allegedly was carrying in the bag and the only witness as to what allegedly was missing upon inspection the following day. But it is in the details of his story, some of which were testified to for the first time at trial despite the fact that plaintiff was deposed twice in the case, that one sees the clearly dubious nature of the claims.

Delta submits it is incredulous that plaintiff would quietly submit, as he claimed at trial, to a forcible checking of his gem and jewel bag without even requesting of Ms. Hall to speak with her supervisor (Trial Transcript at p. 301). Further, it is even more incredible that the plaintiff would recite the value for each piece in his bag to the unnamed security guard, as the guard was inspecting the bag (Trial Transcript at pp. 313-315). But perhaps the most incredible portion of plaintiff's testimony is in regard to what he did when he allegedly retrieved the bag from Delta at Denver's airport. Plaintiff testified that he was extremely concerned about

10

checking his bag when he took the flight from New York to Cincinnati, and then from Cincinnati to Denver (Trial Transcript at pp. 248-249). Yet upon retrieving the bag at Denver's airport, the plaintiff did not inspect the contents to make sure that what he was worried about - over $500,000 in gems and stones- were still contained inside the bag (Trial Transcript at p. 252). Plaintiff admitted that he failed to inspect the bag even when he was in the rented car, with his friend Mr. Jaffey (Trial Transcript at pp. 253-254). Plaintiff failed yet again to inspect the contents of the bag when he arrived with his friend at the facility where the gem show would be held the following day (Trial Transcript at pp. 255-256). Delta submits to the Court that it is without question unbelievable that someone in the plaintiff's position would fail to inspect the contents of his bag, which contained a half million dollars in goods, prior to checking the bag in overnight at the gem show facility. Human nature and common sense dictate that the first thing Mr. Bary would have done, had he really been forced to check his jewel bag, would be to inspect the contents of that bag as soon as possible upon retrieval in Denver.

Plaintiff's testimony with regard to the nature of his discrimination claim is just as incredulous. Although in opening statement plaintiff's counsel insisted that the biggest part of their case was the discrimination claim, it was established during cross-examination of plaintiff that Mr. Bary had no less than six contacts with Delta about the alleged loss of gems and stones, without ever once mentioning a claim of discrimination (Trial Transcript at pp. 272-279). One such contact was made by plaintiff's counsel, Mr. Chaubey, and therefore plaintiff clearly had consulted with legal counsel beforehand yet the letter failed again to mention discrimination as any factor in the alleged incident (Trial Transcript at p. 276 and Plaintiff's Exhibit 11). Accordingly, Delta submits that the claim of discrimination was added as an afterthought by plaintiff in order to bring more attention to the claim and pose a larger threat to Delta as to

potential damages. There are indeed many other instances of incredible testimony by the plaintiff at trial, however, Delta does not believe it necessary to delve into each of these instances as the Court can determine the pattern of the testimony and lack of veracity based upon the trial as a whole.

Delta's story obviously is quite different than the unbelievable tale told by plaintiff. Vera Hall took the stand and readily admitted that she initially made a mistake in advising the plaintiff that as a selectee he would not be permitted to carry the gem bag onto the plane (Trial Transcript at pp. 406-407). Ms. Hall's testimony went further and is very logical and believable when one is experienced with airline practices and procedures. Ms. Hall did exactly what she testified her training taught her to do by involving her supervisor, James Wlodarcyzk, when she could not satisfactorily deal with plaintiff who was refusing to have his bag inspected (Trial Transcript at pp. 410-411). Ms. Hall retrieved her supervisor, then went back to her work as a ticket agent (Trial Transcript at p. 411), contrary to the plaintiff's testimony that: (1) he never dealt with the supervisor on the day in question; and (2) Ms. Hall was present for the hand search and inspection of plaintiff's gem and jewel bag. Mr. Wlodarcyzk's testimony confirmed Ms. Hall's version of events and explained in detail how plaintiff was given a private screening for his gems and jewels and then was permitted to take the bag from the screening area toward the gate from which his flight would depart (Trial Transcript at pp. 462-463).

Furthermore, both Mr. Wlodarcyzk and Delta's witness Craig Lowe testified in detail establishing that a selectee, such as Mr. Bary, was required by federal law to have his bags hand searched. Mr. Bary's claim therefore that he was subjected to a search because he was Muslim is completely unfounded. The testimony of Delta's witnesses also established that no one mistreated Mr. Bary, no one used any racially charged language toward him, no one asked Mr.

12

2492781-01

Bary his religion or ethnicity, and that the security screening he received was mandated by the fact that he was a selectee under the federal program, not for any discriminatory reason.

When the testimony of Mr. Bary is compared to that of the other witnesses with regard to the events at LaGuardia Airport on the morning of November 8, 2001, it is respectfully submitted that the plaintiff's story makes no sense other than in the context of him trying to create a claim against Delta. There was no discrimination by Delta toward the plaintiff and there was no theft of plaintiff's property, at least by Delta, on November 8, 2001 or anytime therafter. There was no credible evidence submitted by plaintiff to support any of his claims and, therefore, dismissal is appropriate.

## CONCLUSION

The plaintiff's evidence at trial failed to support either a claim of discrimination or theft of property by Delta. In fact, there is absolutely no evidence, credible or otherwise, to support a claim for discrimination, other than plaintiff's own self-serving statements of his subjective belief. With regard to the stolen gem claim, plaintiff's own evidence establishes that Delta cannot be found liable for any alleged loss. The totality of the plaintiff's evidence is not credible and, in any event, is insufficient to support any of the claims made at trial. The granting of Delta's motions to dismiss the various claims therefore is warranted and appropriate.

CONNELL FOLEY LLP
Attorneys for Delta Air Lines, Inc.

BY: _____
MICHAEL J. CROWLEY
MICHAEL BOJBASA

DATE:   MARCH 3, 2011

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

DAWN CAMMAYO, being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age and resides at Matawan, New Jersey.

On March 4, 2011, deponent served the within **POST PRE-TRIAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF DELTA AIR LINES, INC'S MOTIN TO DISMISS ALL CLAIMS** upon:

> SANJAY CHAUBEY, ESQ.
> LAW OFFICE OF SANJAY CHAUBEY
> *Attorney for Plaintiff*
> Empire State Building
> 350 Fifth Avenue, Ste. 5013
> New York, NY 10118
> (212) 563-3223

being the addresses designated by said attorneys/parties for that purpose by depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the designated attorneys/parties.

_____
DAWN CAMMAYO

Sworn to before me this
4th<sup>d</sup> day of March, 2011.

_____
Notary Public

MICHAEL J. CROWLEY
Notary Public, State of New York
No. 02CR4848711
Qualified in Nassau County
Commission Expires 12/3/11