```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

MOHAMED BARY,
                    Plaintiff,
                                          FINDINGS OF FACT AND
         - against -                      CONCLUSIONS OF LAW

DELTA AIRLINES, INC.,                     02-CV-5202 (MDG)
                    Defendant.

- - - - - - - - - - - - - - - - - -X

APPEARANCES:
    Sanjay Chaubey, Esq.
    350 Fifth Avenue, Suite 5013
    New York, New York 10001
    Attorney for Plaintiff

    Michael Crowley, Esq.
    Michael Bojbasa, Esq.
    Connell Foley, LLP
    888 Seventh Avenue, Suite 3401
    New York, New York 10106
    Attorney for Defendant
```

GO, United States Magistrate Judge:

Plaintiff Mohamed Bary brings this action against defendant Delta Airlines, Inc. ("Delta") alleging that certain of his possessions were stolen from a small suitcase he had been forced to check in before boarding a Delta flight and that Delta unlawfully discriminated against him in requiring him to do so. This Court held a bench trial on consent of the parties and sets forth below the findings of facts and conclusions of law as to plaintiff's claims.

## PRIOR PROCEEDINGS

Plaintiff commenced this action on September 26, 2002 and, following a pre-motion conference before the late Honorable David G. Trager, filed an amended complaint on July 10, 2003. Compl. (ct.

doc. 1); Am. Compl. (ct. doc. 15).  In both pleadings, plaintiff raised claims of discrimination under federal law pursuant to 42 U.S.C. § 1981 and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; claims of discrimination under state law; and state law negligence and bailment.

The Court stayed the action on November 23, 2005 after Delta's counsel advised that it had filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  See Order of the Court (ct. doc. 34).  After Delta emerged from bankruptcy in 2008, Judge Trager reopened this case, finding that Mr. Bary's claim had not been discharged because Delta had not provided reasonable notice to plaintiff of bankruptcy procedures.  See Order dated April 24, 2008 (ct doc. 47).

Defendant then moved for summary judgment, which Judge Trager granted in part and denied in part on October 10, 2009.  Order of the Court (ct. doc. 82).  Judge Trager dismissed plaintiff's Title VI discrimination claim because plaintiff failed to establish that the monies received by defendant pursuant to the Air Transportation Safety and System Stabilization Act of 2001, 49 U.S.C. § 40101, constituted federal financial assistance within the meaning of Title VI.  42 U.S.C. § 2000d.  Id. at 13-17.  He also dismissed all of plaintiff's state-law claims, but gave plaintiff leave to amend his complaint to advance any additional theories of recovery under federal common law.  Id. at 18-19, 28-34.  Judge Trager denied summary judgment on plaintiff's claim under 42 U.S.C. § 1981, concluding that there was a material issue of fact as to whether a

discriminatory act took place. Id. at 20-28. Similarly, he found an issue of fact as to whether defendant breached the rules of its own tariff and denied summary judgment on defendant's limitation of liability defense that any damages for lost or damaged baggage are capped at $2,500. Id. at 34-47. Last, he denied defendant's request to limit plaintiff's damages to $13,847.76 based on checks and deposit slips produced at that time by plaintiff. Id. at 48-47.

Plaintiff filed a Second Amended Complaint on December 4, 2009 asserting claims of discrimination under 42 U.S.C. § 1981, negligence under federal common law, negligent misrepresentation and bailment. Ct. doc. 85. After further discovery, the parties consented to proceeding before me for all purposes pursuant to 28 U.S.C. § 636(c). Plaintiff then moved to strike the defendant's jury demand which Delta made only in response to plaintiff's Second Amended Complaint which this court granted. See Minute Entry (ct. doc. 112).

A bench trial was held on February 1, 3 and 4, 2011. At the conclusion of plaintiff's case in chief, defendant moved for judgment for judgment as a matter of law to dismiss plaintiff's claims. Trial Tr. at 334-37. The Court reserved decision on the motion, except for plaintiff's claim for punitive damages, which was dismissed. Tr. at 340-44. Although this Court did not require post-trial submissions, defendant filed a post-trial memorandum and requested the Court to dismiss the remainder of plaintiff's claims. See ct. doc. 117. Plaintiff objected to defendant's filing of the "motion" but did not respond on the merits. Letter to the Court from Sanjay Chaubey, Esq. dated March 9, 2011 (ct. doc. 118).

Based on my review of the testimony and other evidence presented at trial, I set forth below my findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52 and grant judgment in favor of defendant.

## SUMMARY OF TESTIMONY

Plaintiff testified in his case and defendant presented three witnesses: Mr. Craig Lowe, a current Delta employee who worked as the Manager of Corporate Security for Delta at LaGuardia Airport in 2001; Ms. Vera Hall, the Delta ticket agent, now retired, who interacted with plaintiff during the incident; and Mr. James Wlodarcyzk, a former Delta employee who was Ms. Hall's supervisor at the time of the incident.

The undisputed testimony presented is that Mohammed Bary bought a round trip ticket on Priceline for a flight on Delta from LaGuardia to Colorado to participate in a jewelry trade show in Denver. When Mr. Bary arrived at the airport to depart on the flight in the morning of November 8, 2001, he went to a Delta ticket counter where Vera Hall was stationed. He had two bags and requested to check one of his bags, a canvass bag the size of a small gym bag which contained clothing. His other bag was a small nylon suitcase which contained jewelry and gems that he was taking to the trade show. Plaintiff kept his jewelry in boxes and two pouches, with his more precious stones and rare gems put in separate paper packets inside the two pouches and in a ring box. Tr. at 31, 33, 59-61, 71-72.

Ms. Hall informed plaintiff that he was selected for extra screening and both of his bags would have to be searched and checked-in as baggage. Although plaintiff protested because he was carrying gems and jewelry in the suitcase, a search of Mr. Bary's two bags was subsequently conducted. Following the search, he boarded an airplane and later arrived in Denver without incident. After arriving in Denver, plaintiff took his suitcase with the jewelry to the facility where the trade show would be held and stored the suitcase in a locker in a guarded area. As he was setting up at the show the next day, he discovered that the two pouches and a ring box were missing. He immediately took a taxi to the Denver airport to report his loss and subsequently filed claims with Delta.

The parties presented vastly different versions of the events surrounding the search. Mr. Bary testified that after advising him that he was on a "random checklist," Ms. Hall led him with his bags a short distance away to an area to the side of the ticketing counter. Tr. at 27-30. A security officer conducted the search at a table in full view of the public. Tr. at 31-32, 35-36. After opening the suitcase with the jewelry, the security guard spent fifteen to twenty minutes examining its contents, taking every gem out of its paper packet or box and questioning plaintiff in detail about each item. Tr. at 32-35, 59-60. Ms. Hall stood at the guard's side for most of the search, but left at some point to return with a second baggage tag. Tr. at 33, 36, 42, 305-07. When the search ended, Ms. Hall put baggage tags on the two bags, gave plaintiff his boarding passes and forced him to check in the bags. Tr. at 36, 72.

After locking his suitcase, plaintiff asked why he was singled out. Tr. at 38, 249.  Ms. Hall responded that we (Delta) "always allow only [what] we like and we will not allow if we don't like."  Tr. at 38.

Defendants' witnesses testified that they interacted with plaintiff in a manner consistent with their understanding of the federal rules for airline security and Delta's procedures.  After printing a baggage tag for plaintiff, Ms. Hall informed plaintiff that he was selected to have his bags searched and could not carry them onto the plane.  Tr. at 404-06.  When plaintiff protested that he carried valuable gems and did not want a public search, Mr. Wlodarczyk and two unidentified persons from a private security contractor conducted a private search of the jewelry bag.  Tr. at 456.  After the search concluded, plaintiff was permitted to take his luggage with him when he left the secure area in the direction of the airplane gates.

I found that defendant's witnesses, particularly Ms. Hall, were credible and provided a more plausible version of the events.  I thus make findings of fact as follows.

## FACTUAL FINDINGS

Plaintiff Mohamed Bary was born in the Republic of Sri Lanka and lives in the United States as a legal resident.  See ct. doc. 85 at ¶ 9; Tr. at 15.  As a buyer and seller of gems and jewelry, often on consignment, he attends a number of trade shows around the country each year and usually travels by plane.  Ct. doc. 85 at ¶ 10; Tr. at

17.  Prior to November 8, 2001, he was able to carry on to the plane a small, nylon suitcase containing his jewelry.  Tr. at 19, Pl.'s Trial Ex. 51.

Plaintiff booked a flight on Priceline for travel to Denver on November 8, 2001 and arrived early in the morning on that date for his flight.  Tr. at 26; Pl.'s Trial Ex. 1.[1]  Plaintiff approached the ticket counter staffed by Ms. Hall and stated that he wished to check one bag.  Tr. at 27, 405, 430.  When Ms. Hall printed a tag for the bag, she was alerted by coded letters on the tag that plaintiff had been designated as a random selectee for a search of his bags by hand.  Ct. doc. 85 at ¶ 14; Tr. at 401-03, 405-06, 425.  Ms. Hall informed plaintiff that he was selected for a random search and would have to check in both bags.  Tr. at 28, 405-07.  Because she mistakenly believed that selectees could not carry any bags on board the airplane, Ms. Hall generated a second baggage tag.  Tr. at 431.  Plaintiff protested and eventually stated that he didn't want to check in his bag because he was carrying large amounts of jewelry.  Tr. at 408, 411, 431.  Ms. Hall told him that these were rules that had to be followed.  Tr. at 408.  In the course of the discussion between the two, plaintiff became visibly angry and refused to have his bags searched in public view.  Id.  After Mr. Bary continued to

---

[1]  Plaintiff testified that he arrived early to be certain he had time to pass through security and requested an earlier flight.  Tr. at 26.  Ms. Hall did not recall whether plaintiff requested to change his original flight, but, upon examination of the computerized Passenger Name Record (PNR) for plaintiff, noted that the PNR indicated that the flight had been canceled and that plaintiff's flight had been changed by someone else to a flight routed through Cincinnati.  Tr. at 401, 405, 421-424; Ex. 83.

say that he did not want to have his bag checked nor to open it up, Ms. Hall told him to wait in front of the ticket counter and told him she would get her supervisor, James Wlodarczyk. Tr. at 411-12, 425-24, 433.

Ms. Hall found Mr. Wlodarczyk a short distance from the ticketing area. Tr. at 412. When Ms. Hall told him that a passenger was giving her a hard time after being told he had to have his bags searched, Mr. Wlodarcyzk instructed Ms. Hall to bring plaintiff to him for a private search. Tr. at 411-12, 428-29, 432, 440-41, 450. Ms. Hall returned to the counter, affixed baggage tags on both of plaintiff's bags, and gave Mr. Bary his boarding passes and baggage claim check. Tr. at 410, 412-413, 429-30. Ms. Hall instructed Mr. Bary to follow her with his bags and led him to Mr. Wlodarczyk. Tr. at 412. She then returned to her ticketing podium and did not see plaintiff again that day. Tr. at 412, 414, 429, 451. She was not present for any part of the hand search of plaintiff's bags since it was not part of her responsibility as a ticketing agent. Tr. at 412-13.

Plaintiff complained to Mr. Wlodarczyk that he was the subject of discriminatory treatment, but, in Mr. Wlodarczyk's view, was not forthcoming until asked several times that the reason for his complaint was that he was carrying valuable gems in his suitcase. Tr. at 450, 453-54, 465. When he learned that plaintiff carried gems, Mr. Wlodarczyk explained that Delta had a policy for screening jewelers and escorted plaintiff to a security checkpoint where plaintiff showed his boarding pass and identification. After

plaintiff put his bags on a belt[2] (presumably for X-ray inspection) and passed through a magnetometer, Mr. Wlodarczyk led him to a curtained-off area just beyond the checkpoint for a private search to be conducted.  Tr. at 450, 453.  Mr. Wlodarczyk had called the private security contractor to conduct a search and the search was conducted by a screener with the screener's supervisor and Wlodarcyzk present.  Tr. at 453, 456.  The search lasted around five to eight minutes, during which time jewelry trays were removed from the bag and the bag was inspected.  Tr. at 456, 474.  After the search was completed, plaintiff left the private screening area with his bags and walked in the direction of the concession area, which led to the gates.  Tr. at 456, 459-60; see also 360 (testimony of Mr. Lowe as to standard procedure).  Mr. Wlodarczyk did not see Mr. Bary again.  He later informed Ms. Hall that selectees were permitted to take carry-on baggage on their airplanes.[3]  Tr. at  406-07, 412-15, 425-27, 437.

After arriving in Denver, plaintiff met a fellow jeweler, Mr. Shafy, in the claim area, who gave him a ride to the trade show venue in a rental car.  Tr. at 57, 252-54.  Plaintiff put his suitcase with the jewelry into a locker in a special area guarded by security personnel and cameras.  Tr. at 254-55, 257-58.  Plaintiff did not

---

[2] Both plaintiff and Ms. Hall testified that plaintiff had two bags, while Mr. Wlodracyzk stated did not know how many bags Mr. Bary was carrying and had no recollection that plaintiff had another bag besides the suitcase with the jewelry.  Tr. 468-69.

[3] Ms. Hall stated that she learned of her mistake regarding selectees' right to carry bags on the plane at least a day after the incident, Tr. at 432, while Mr. Wlodarczyk stated it he discussed it with her later that day.  Tr. at 484.  The Court agrees with Ms. Hall's testimony, but does not find this discrepancy to be material.

open his bag at the airport nor any time before he put it into the locker. Tr. at 252, 254-55. The next day, he went to storage area, took his bag from the locker and prepared to display his jewels. Tr. at 58, 258. Upon opening the bag, he saw some jewelry in boxes, but discovered that the two pouches and a ring box containing the most valuable gems were missing. Tr. at 316-17.

Plaintiff reported the missing items to the Denver airport police and, upon his return to New York, to authorities at LaGuardia airport. Tr. at 58-59, 66. He also called Delta customer service and, pursuant to their instructions, drew up a list of the missing items at his hotel. Tr. at 61; Pl.'s Trial Ex. 5. He also wrote multiple letters to Delta Airlines concerning the loss of his gems. Tr. at 78-80, 83, 86-87, 88-89.

As Mr. Lowe testified, in November 2001, airlines were required by the Federal Aviation Administration ("FAA") as part of airport security procedures to use a computer program for the random designation of certain passengers as "selectees" who would then be subject to additional screening. Tr. at 349-51. The designation was made by the program upon the printing of baggage tags which were generated for all airports from a system-wide computer for Delta. Tr. at 352-54. The tags for selectees were printed in reverse colors from tags for other passengers and bore the letters "PPBM," which stand for "positive passenger bag match" and served to alert airport personnel that the passenger is required to be on the same flight as his or her bags. Tr. at 352-54. Passengers designated as selectees

-10-

were required to submit all baggage to a hand search.  Tr. at 355-56, 360.

Because federal regulations regarding procedures for checking in changed frequently after September 11, 2001, Ms. Hall, as well as other ticketing agents, received a daily briefing from her supervisors at the start of her shift at 5:00 a.m. on the proper procedures.  Tr. at 394-98.  Although Ms. Hall incorrectly thought that all bags of a passenger designated as a "selectee" had to be checked after a search, she otherwise carried out her duties in checking in Mr. Bary in a non-discriminatory manner.  Tr. at 440. Because he wanted to check in a bag, she followed standard procedures in printing out a baggage tag first.  Tr. at 402-03, 405.  At that time, she noticed that Mr. Bary was a selectee because the tag contained the letters "PPBM" and told him that his baggage would be subject to a hand search.  Tr. at 402, 405-06, 407.  When Mr. Bary protested, she followed procedures to seek assistance of her supervisor and then to return to her counter thereafter.  Tr. at 408, 410-12, 451.

Likewise, Mr. Wlodarcyzk followed regulations and airline procedures in dealing with Mr. Bary.  Because FAA regulations required that a passenger's luggage be hand-searched at a location beyond the security checkpoint, he took Mr. Bary past a magnetometer to a "sterile area" for a search.  Tr. at 364, 453.  Federal laws mandated security measures for selectees and baggage searches and defendant had corporate policies in place in 2001 to accommodate jewelers carrying valuables in their luggage.  Tr. at 349-50, 447,

450. In accordance with standard procedures for both the security company and Delta, a supervisor was present for a private hand search of Mr. Bary's luggage. Tr. at 455-56. After the search was completed, Mr. Bary was not forced to check in his bag and was permitted to leave with his bag. Tr. at 459-60, 462. Mr. Wlordarcyzk did not take off the baggage tag. Tr. at 461.

I find plaintiff's account of the events not believable for a number of reasons. Foremost, I find Ms. Hall's version of her interactions with Mr. Bary very credible and do not believe plaintiff's testimony that Ms. Hall told him she could treat passengers as she wished and acted in a conspiratorial fashion with the security guards during the search. I credit her testimony that it was a busy time at the airport, so she promptly returned to her station after bringing Mr. Bary to her supervisor and was not present at the search. Ms. Hall and Mr. Wlodarczyk also credibly testified that neither of them had any intention either to discriminate against plaintiff or to steal from him. Tr. at 408-09, 415, 461-61.

Plaintiff's testimony that a search was conducted in full public view at a table near the ticket counter was not plausible. Tr. at 325. I did not believe his testimony that the security guard conducting the search wore a t-shirt and had the time to examine and ask about the value of every piece of jewelry. Tr. at 312-14. In contrast, Mr. Wlodarcyk credibly testified that the search was conducted after the bags went through an X-ray and that he and the two security contractor personnel at the search wore collared shirts, the screener's bearing an emblem. Tr. at 455, 459.

-12-

Plaintiff offers no evidence other than his speculation that Ms. Hall's conduct was motivated by discriminatory intent and that she plotted with others to steal his jewelry. Ms. Hall clearly had nothing to do with the designation of Mr. Bary as a selectee or the rules governing the search of the baggage of a selectee. To the contrary, all of defendant's witnesses credibly testified that after September 11, 2001, there were frequent changes in security regulations and as to the method used for identifying persons selected for a hand search of baggage. Tr. at 356-57 (Mr. Lowe's testimony), 395-98 (Ms. Hall's testimony), 457-59 (Mr. Wlodarczyk's testimony). Even though Ms. Hall was wrong in telling plaintiff that he could not carry his bag on board, such a misstatement was immaterial in light of my finding that plaintiff was not forced to check his bag after the search concluded. Also, I find that Mr. Wlodarczyk's testimony and personal recollection of the search of plaintiff's bag more credible than plaintiff's assertion that he never met Mr. Wlodarczyk. Tr. at 495.

Plaintiff also fails in his attempt to support his theories by virtue of the fact that the numbers on the baggage tags were not consecutive.[4] Plaintiff offers no explanation why the gap in the tag numbers would tend to prove that a Delta employee targeted him for further search. As Mr. Lowe explained, Delta employees have no ability to determine the persons as selectees and selectees were

---

[4] During cross-examination, plaintiff implies that the tag that was printed first had a higher number than the tag that was printed second. Tr. at 289-90. On re-direct, plaintiff's counsel emphasized that the numbers on the tags were not consecutive. Tr. at 327-28.

picked through a computer system mandated by the FAA for generating baggage tag numbers on a nationwide basis. Tr. at 349-52, 354-55, 373. If any time passed between generation of the first and second baggage tags, the numbers would most likely not be consecutive. Tr. at 354-55.

Plaintiff's baggage tags admitted as Exhibit 2 corroborate the testimony of defendants' employees. As indicated by Mr. Lowe, the tags show white text on a black background and, consistent with Ms. Hall's testimony regarding the pertinent indicators that a passenger is a selectee, contain the letters "PPBM." Tr. at 352-53, 402. Similarly, plaintiff's Trial Exhibit 3, plaintiff's boarding pass from Denver to Cincinnati, shows a designation "SELPX," which Ms. Hall and Mr. Lowe testified indicates that the passenger is a selectee. Tr. at 359 (Mr. Lowe), 403 (Ms. Hall). As Mr. Lowe also testified, once plaintiff was so designated, Delta employees had no discretion to decide whether to search hand-search his bags. Tr. at 356, 360.

Last, plaintiff's testimony about his own conduct does little to support his version of the facts. Notwithstanding being subject to an allegedly lengthy search of his bag in full view of the public and being forced to check-in his bags, plaintiff inexplicably did not immediately inspect the bag after he landed or some time before leaving the bag in a storage locker. Even though plaintiff testified that the lock he had placed on the bag was intact and the weight felt correct, Tr. at 250-51, the Court does not find credible that plaintiff waited until the following morning to open the bag.

-14-

In sum, I find that plaintiff was not required to check in his bags and was not treated in a discriminatory manner on the basis of his ethnicity, religion or any other improper ground.

## **CONCLUSIONS OF LAW**

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of the parties and the amount in controversy and 26 U.S.C. §§ 1331, 1343 and 1367 based on plaintiff's federal claims. A substantial part of events giving rise to plaintiff's claim occurred within this district. Ct. doc. 113 at ¶ 2.

The nature of the claims under which plaintiff proceeded at trial were not clearly articulated. However, reading plaintiff's Second Amended Complaint and the joint pre-trial order generously, this Court sees six possible causes of action between these two submissions: racial discrimination, negligence, respondeat superior, negligent supervision, bailment and breach of a contract of carriage. The plaintiff has the burden to prove elements of his claims by a preponderance of the evidence.

Based on the findings of fact made, this Court concludes that plaintiff failed to establish that defendants' employees engaged in any irregular search procedures; that he was, in fact, not forced to check the suitcase containing his jewelry; and that, to the extent any of the jewelry was missing when he opened his suitcase the morning after his flight, the cause for the disappearance of the gems was not caused by Delta personnel. To the contrary, I find that (1)

plaintiff was randomly designated a selectee by an FAA mandated computer system over which Delta employees had no discretion, (2) FAA regulations mandated that plaintiff's luggage be searched, (3) the private search of plaintiff's jewelry bags was conducted in a sterile area beyond a security checkpoint, behind a privacy curtain in the presence of Mr. Wlodaczyk, a security supervisor and a screener and (4) plaintiff was permitted to take his jewelry bag on the plane. Therefore, his claims must fail regardless of which legal theory he invokes since he did not lose any jewelry as a result of the conduct of any Delta employee.

Plaintiff's claims for negligence, <u>respondeat superior</u>, negligent supervision, bailment and breach of contract likewise fail since liability is dependent on proof that the bag was Delta's custody after the search. <u>See</u> ct. doc. 85 at 4-5, 7, 9, 10-15. Plaintiff simply failed to establish by a preponderance of the evidence that he was forced to check in his bags or was otherwise separated from his jewelry bag.

I also note that it is not clear to what extent plaintiff may assert tort claims for damage to lost or stolen baggage. Caselaw pertaining to claims against airlines for lost or damaged baggage suggests that federal aviation regulations bar common-law actions for negligence and permit plaintiffs in Mr. Bary's position to pursue only claims under the contract that they formed with defendant by purchasing travel tickets. <u>See</u> <u>Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Sys., Inc.</u>, 235 F.3d 53, 60 (2d Cir. 2000) (holding that a valid limitation of liability clause limits recovery on

contract as well as tort claims); Feldman v. United Parcel Servs, 2008 WL 2530814, at *1 (S.D.N.Y. 2008) (reconsidering denial of summary judgment on federal common-law negligence claim for lost mail shipment because "any recovery . . . premised on federal common law must rest on a theory that UPS breached its contract of carriage"); see also Ing v. American Airlines, 2007 WL 420249, *4 (N.D.Cal. 2007) (dismissing plaintiff's negligence claim against defendant airlines on the ground that "[f]ederal common law dealing with interstate shipments of cargo preempts tort claims for loss or damage to goods").

Setting aside whether plaintiff was forced to check a bag that he had intended to carry on board and that otherwise fit within the size and weight limitations for carry-on luggage, plaintiff's claim of discrimination also fails. He alleges that defendant discriminated against him in violation of 42 U.S.C. § 1981(b). Section 1981 prohibits racial discrimination in the making and enforcement of contracts, which guarantees to all persons the same "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" regardless of race. 42 U.S.C. § 1981(b).

To state a claim under § 1981, a plaintiff must show "(1) that [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Lauture v. Int'l Bus. Mach., 216 F.3d 258, 261 (2d Cir. 2000). In other words, the statute requires that defendant's actions be "intentionally and purposefully discriminatory" and

motivated by plaintiff's race. Poles v. Brooklyn Cmty. Hous. and Servs., 2011 WL 4963130, *2 (E.D.N.Y. 2011) (internal citations omitted).

Race, for the purpose of this statute, encompasses ethnicity and national origin, to the extent that either characteristic can be interpreted as a "racial" characteristic as that term was intended to be used by the Reconstruction-Era Congress. Saint Francis College v. Al-Khazraji, 481 U.S. 604, 608-10 (1987). The parties do not dispute that plaintiff, who identifies his national origin as Sri Lankan and his (actual or perceived) ethnicity as South Asian or Sri Lankan, is a member of a racial minority. Ct. doc. 85 at ¶ 9. Nor does defendant dispute that plaintiff's Delta ticket constituted a contract between the parties; the Second Circuit agrees that an airline ticket functions as a contract of carriage. See, e.g., King v. Am. Airlines, Inc., 284 F.3d 352, 355 (2d Cir. 2002); Dennis v. Delta Air Lines, Inc., 2011 WL 4543487, *2 (E.D.N.Y. Sept. 29, 2011).

As explained by Judge Trager in his opinion on defendant's motion for summary judgment, a claim of racial discrimination that is based on circumstantial evidence, as plaintiff's is here, must be analyzed under the burden-shifting test announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See ct. doc. 82 at 22; Dennis, 2011 WL 4543487 at *4. As plaintiff has no direct evidence that defendant forced him to check his bag due to a racial animus, he must first prove that he was "treated less favorably than those of another race who are similarly situated." Ct. doc. 82 at 23 (internal citations removed); Dennis, 2011 WL 4543487 at *4. If he

-18-

succeeds, defendant then bears the burden of establishing a legitimate, non-discriminatory reason for the disparate treatment. Ct. doc. 82 at 23 (internal citations removed); Dennis, 2011 WL 4543487 at *4. The burden then shifts back to plaintiff to demonstrate that the reason offered by defendant to explain its action is pre-textual and that the action in question was motivated by race. Ct. doc. 82 at 23-24 (internal citations removed); Dennis, 2011 WL 4543487 at *4. In discussing this test, the Second Circuit has noted that "[t]he court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder . . . that defendants intentionally discriminated against them on the basis of their race." Lizardo v. Denny's, Inc., 270 F.3d 94, 103 (2d Cir. 2001).

Plaintiff's first step is therefore to demonstrate that he was treated differently from white Delta passengers. Although plaintiff testified that he felt discriminated against when Ms. Hall told him that he was subject to a search of his bags, there is no credible evidence that his race played any role in his designation as a selectee, even assuming that he was forced to check in (or otherwise checked in) his jewelry bag. Although the parties agree that his jewelry bag was hand-searched, the testimony of defendant's employees establishes that FAA regulations required that such a search take place because plaintiff was designated a selectee. The evidence produced by plaintiff in the form of baggage tags and a boarding pass confirms that these documents contained the pertinent indicators explained by Ms. Hall and Mr. Lowe. Moreover, Delta and its

-19-

employees had no discretion in designating plaintiff as a selectee chosen for further search.

In short, at no point during the events in dispute did defendant's employees discriminate against plaintiff. Except for Ms. Hall's erroneous statement to plaintiff that the bags could not be carried on board, which had no significant effect on the events of that day, all actions undertaken by Delta personnel were mandated by FAA regulations and in accordances with defendant's standard procedure. Similarly, defendant cannot be held liable under any other legal theory because plaintiff was not forced to check his bag.

## CONCLUSION

For the foregoing reasons, I find that the plaintiff has failed to prove any of his claims against defendant. It is hereby ordered that plaintiff's claims be dismissed and judgment be entered in favor of defendant.

**SO ORDERED.**

Dated:   Brooklyn, New York
         March 29, 2013

/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE